589 F.2d 1240
 Bankr. L. Rep. P 67,142
In the Matter of PARAGON SECURITIES COMPANY, a New Jersey
Corporation, Paragon Securities Company of New York, a New
York Corporation, Municiplex Funding, Inc., a New Jersey
Corporation, Paragon Life Agency, Inc., a New Jersey
Corporation, Paragon Insurance Agency, a New Jersey
Corporation, Nelson Stousland School, Inc., a New Jersey
Corporation, and Paragon Securities Company of Florida, a
Florida Corporation, Bankrupts.
Charles GIANNONE, Appellant,
v.
Louis S. COHEN, Trustee in Bankruptcy of Paragon Securities,
et al., Appellees.
 No. 78-1206.
 United States Court of Appeals,
 Third Circuit.
 Argued Oct. 6, 1978.
Decided Dec. 20, 1978.
 
 Arthur Uscher, Friedman, Kates, Uscher & Pearlman, Rutherford, N. J., for appellant.
 Myron S. Lehman, Lehman & Wasserman, Millburn, N. J., for bankrupts.
 Frank J. Vecchione, Crummy, Del Deo, Dolan & Purcell, Newark, N. J., for appellees.
 Before SEITZ, Chief Judge, HUNTER, Circuit Judge, and CAHN,* District Judge.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 Charles Giannone appeals from a decision of the district court affirming the bankruptcy judge's determination that Giannone is not entitled to reclaim money which he paid to Paragon Securities Company (hereinafter Paragon or Company), prior to the date of Paragon's bankruptcy. In this suit, Giannone contends that Paragon acted fraudulently both in inducing Giannone to enter into a contract for the purchase of securities and in accepting Giannone's payment for the securities when Paragon was insolvent. Giannone asserts that Paragon's fraud entitles him to rescind the contract and reclaim his money from the bankrupt estate. The bankruptcy judge and the district court held that Giannone had failed to prove fraud on the part of Paragon. We affirm.
 
 I.
 
 2
 This suit concerns the purchase of New Jersey Turnpike Bonds. Responding to the advice of his accountant, Giannone sought to invest in municipal securities. On July 17, 1973 Giannone entered into an agreement with Paragon to purchase Turnpike bonds for $50,680.83.[1] On July 23, 1973 Giannone received the confirmation of sale slip which set the settlement date as July 27, 1973.
 
 
 3
 Paragon purchased the bonds from a third party on July 24, 1973 through Securities Processing Services, Inc. (SPS). SPS generally acted as a receiving and storage agent. It also made loans to Paragon and executed credit purchases of securities, charging the price to Paragon's account. To assure the loans and credit purchases, SPS took a security interest in the bonds it held on behalf of Paragon. Generally, Paragon gave SPS instructions seven days after settlement to forward the bonds to the customer. On this occasion, SPS paid the third party $49,969.59 for the Turnpike bonds. As usual, SPS charged that amount to Paragon's account and retained possession of the bonds.
 
 
 4
 Paragon received and deposited Giannone's check on July 30, 1973. That day, at 4:00 p.m., the Board of Directors of Paragon met. It passed a resolution authorizing the filing of a petition in New Jersey Superior Court, Chancery Division, seeking the voluntary dissolution of the company and the appointment of a receiver. The petition also requested that Paragon be adjudged insolvent. Lawrence S. Brown, chief operations officer of Paragon, testified that the office staff and he were not aware of the Board of Directors' decision to seek dissolution until the petition was filed on August 1, 1973. On August 6, 1973 one of Paragon's creditors filed an involuntary petition in bankruptcy against the company in federal court.[2]
 
 
 5
 As of August 6, 1973 SPS remained in possession of the New Jersey Turnpike Bonds. When SPS discovered that Paragon had filed a state court action for dissolution, it decided to foreclose on its security interests. SPS sold a substantial number of the securities it held for Paragon, including the Turnpike bonds, on August 7, 1973. Because of the intervening bankruptcy petition, Paragon never gave SPS the usual instruction to forward the Turnpike Bonds to Giannone. SPS sold the bonds which would otherwise have been sent to Giannone for $47,855.42 and deducted that amount from Paragon's debt.
 
 II.
 
 6
 Giannone seeks to reclaim the money he paid to the bankrupt. In bankruptcy court and later in district court, Giannone attempted to demonstrate fraud on the part of Paragon. The legal theory underlying a suit for reclamation based on fraud is that "a Trustee in Bankruptcy can have no interest in property acquired by the fraud of the bankrupt, or anyone else, as against the claim of the rightful owner of such property."[3] Nicklaus v. Bank of Russellville, 336 F.2d 144, 146 (8th Cir. 1964). The rule was succinctly stated in In re Stridacchio, 107 F.Supp. 486, 487 (D.N.J.1952):
 
 
 7
 Where goods are obtained by fraud of the bankrupt, the seller may rescind the contract of sale and reclaim them if he can identify them in the hands of the trustee. This is on the theory that fraud renders all contracts voidable, and that neither in law nor in morals would the trustee be justified in holding goods obtained by the fraud of the bankrupt for the benefit of other creditors. Such creditors have no right to profit by the fraud of the bankrupt to the wrong and injury of the party who has been deceived and defrauded.
 
 
 8
 Though this is a proceeding in bankruptcy governed primarily by federal law and within the exclusive jurisdiction of the federal courts, fraud is established according to state law. As Collier on Bankruptcy states, "(m)ost of the issues in bankruptcy cases involving the right to rescission are variations on a single theme: does the act complained of give rise to a right to rescission under the local law?" 4A Collier on Bankruptcy P 70.41, at 484 (14th ed. 1975). In re Tate-Jones & Co., 85 F.Supp. 971, 980 (W.D.Pa.1949). Here, the issue of whether Paragon has committed fraud in its relations with Giannone is determined according to New Jersey law. Both Giannone and Paragon are New Jersey citizens; also, the contract was made and performance was to take place in New Jersey. Generally, to prevail under New Jersey law in an action for fraud, Giannone must show a false representation by Paragon, knowledge or belief by Paragon of the falsity, an intention that Giannone act thereon, reasonable reliance by Giannone on the false representation, and resultant damage. Parker Precision Products Co. v. Metropolitan Life Insurance Co., 407 F.2d 1070, 1076 (3d Cir. 1969); Van Houten Service, Inc. v. Shell Oil Co., 417 F.Supp. 523, 527 (D.N.J.1975), Aff'd, 546 F.2d 421 (3d Cir. 1976); Bilotti v. Accurate Forming Corp., 39 N.J. 184, 206, 188 A.2d 24, 36 (1963); Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 585-86, 127 A.2d 13, 18 (1956). The burden is on Giannone to establish these necessary elements of an action for fraud. Pappas v. Moss, 257 F.Supp. 345, 361 (D.N.J.1966), Rev'd on other grounds, 393 F.2d 865 (3d Cir. 1968), On remand, 303 F.Supp. 1257 (D.N.J.1969).
 
 
 9
 Giannone, at the outset, is faced with a formidable task. Bankruptcy Rule 810[4] dictates that the district court review findings of fact by the bankruptcy judge by the clearly erroneous standard; this court on appeal is similarly limited by Rule 52(a)[5] of the Federal Rules of Civil Procedure. Giannone challenges the application of the clearly erroneous standard and urges that we exercise independent review. He contends that the issue of fraud is a conclusion of law, not a finding of fact. Of course, when a case raises purely legal issues, the clearly erroneous standard does not apply. In re Meade Land and Development Co., 527 F.2d 280, 282-83 (3d Cir. 1975).
 
 
 10
 The crucial issue in this reclamation suit is the intent of the party alleged to have committed the fraud. The court in Tepper v. Chichester, 285 F.2d 309, 312 (9th Cir. 1960), addressed the appropriate standard of review:
 
 
 11
 In reclamation proceedings, the findings of the referee on questions of intent, purpose, possession and the nature of the dealings between the parties are questions of fact, or in some instances, mixed questions of law and of fact, and the findings of the referee as approved and confirmed by the District Judge will not be set aside on anything less than a demonstration of clear mistake in applying the law.
 
 
 12
 In In re Butler, 425 F.2d 47 (3d Cir. 1970), this court was confronted with allegations of fraud in the bankruptcy context. We applied the clearly erroneous standard to a determination by the referee that the bankrupt had acted with "reckless indifference in effectuating the transaction . . . in total ignorance of the true facts." Id. at 50.
 
 
 13
 The second obstacle which Giannone must overcome is that he must show fraud by clear and convincing evidence. First, when seeking rescission of a contract in equity for fraud, New Jersey law requires proof by that standard. Williams v. Witt, 98 N.J.Super. 1, 4, 235 A.2d 902, 903 (1967); Connelly v. Weisfeld, 142 N.J.Eq. 406, 59 A.2d 869 (1948). Moreover, in order to fulfill the Bankruptcy Act's goals of avoiding the "danger of improper preferences being obtained under the guise of thus rescinding contracts of sale and reclaiming goods sold on the ground of fraud, . . . the fraud must be established to the satisfaction of the court by evidence clear, unequivocal, and convincing." In re Stridacchio, 107 F.Supp. 486, 488 (D.N.J.1952). We wish to emphasize that the bankruptcy judge found "not one scintilla of evidence to even infer a fraudulent misrepresentation in the original agreement by Paragon to sell the bonds to Giannone." App. at 25a.III.
 
 
 14
 Giannone contends that Paragon acted fraudulently at two different stages of the transaction. First, Giannone claims that Paragon fraudulently induced him to enter into the original contract on July 17, 1973 for the purchase of the Turnpike bonds. Second, Giannone alleges that Paragon acted fraudulently in accepting his check for the bonds and depositing the check to its regular operating account on July 30, 1973, the same day that it decided to file for voluntary dissolution when insolvent.
 
 
 15
 In seeking to show that Paragon fraudulently induced him to enter into the contract, Giannone has pointed to four circumstances which he contends satisfy his burden. He asserts that Paragon failed to disclose its precarious financial position; failed to disclose the fact that it did not own the bonds at the time the contract was entered; failed to disclose its practice of delaying delivery of the bonds until seven days after payment; and failed to disclose the arrangement whereby SPS possessed a security interest in the bonds. Notably, Giannone does not contend that Paragon affirmatively misrepresented its financial position.
 
 
 16
 The line of cases considering a suit for reclamation based on fraud begins with Donaldson v. Farwell, 93 U.S. 631, 23 L.Ed. 993 (1876). There, the Supreme Court held that "a party not intending to pay, who . . . induces the owner to sell him goods on credit by fraudulently concealing his insolvency and his intent not to pay for them, is guilty of a fraud which entitles the vendor, if no innocent third party has acquired an interest in them, to disaffirm the contract and recover the goods." Id. at 633, 23 L.Ed. 993. The court in In re Tate-Jones & Co., 85 F.Supp. 971, 982 (W.D.Pa.1949), took this analysis one step further: "(I)n the absence of . . . material false representations, it is incumbent upon the seller to prove, not only that the buyer concealed his insolvency, but did not intend to pay for the goods when they were purchased." See In re Penn Table Co., 26 F.Supp. 887, 889 (S.D.W.Va.1939). Further, "(w)hen a buyer fails to disclose his insolvency, but in good faith believes that he will be able to pay for the goods, he is not guilty of a fraud which will entitle the seller to rescind the sale and reclaim the goods in the hands of the trustee in bankruptcy." 85 F.Supp. at 983. Accord, Rochford v. New York Fruit Auction Corp., 116 F.2d 584, 585 (2d Cir. 1940) (must have evidence from which trier can "reasonably infer in the buyer both a knowledge of insolvency and a present intention not to pay for the goods"). Moreover, the mere failure of a party to disclose that he is insolvent does not constitute a fraud entitling the other party to rescind the sale and reclaim the goods from the trustee. John Heidsik Co. v. Rechter,291 Mich. 708, 289 N.W. 304 (1939).
 
 
 17
 Applying these legal principles to the facts here, it is apparent that Giannone has failed to meet his burden. Since he has not alleged that Paragon materially misrepresented its financial position, Giannone must show that Paragon contracted with the intent not to perform. However, Giannone has made no attempt to show Paragon's state of mind. We grant that fraudulent intent may be inferred from objective standards, United States v. Vandersee, 279 F.2d 176, 179 (3d Cir. 1960) (criminal case), Cert. denied, 364 U.S. 943, 81 S.Ct. 463, 5 L.Ed.2d 374 (1961), and that no "reasonable expectation" of being able to perform may be sufficient to constitute fraud. In re Whitewater Lumber Co., 7 F.2d 410, 412 (N.D.Ala.1925). Accord, In re A. C. Kelly & Co., 6 F.Supp. 221, 221-22 (S.D.N.Y.1933). But Giannone has not given us sufficient objective factors from which we may determine that Paragon contracted with no reasonable intention of being able to deliver the bonds. Those of the factors which he does allege that Paragon did not own the Turnpike bonds when it entered into the contract to sell them, that it had a practice of delayed delivery of bonds, and that it had acquired the bonds subject to a security interest certainly do not demonstrate, by themselves, that Paragon could not reasonably have expected to perform at the time it contracted with Giannone. These practices were part of Paragon's general operating procedure, under which Paragon had been performing its contracts to deliver bonds for quite some time.
 
 
 18
 Giannone must rely, then, substantially on the single fact that on July 30, 1973, two weeks after the parties entered into the contract, Paragon authorized the filing of a petition for dissolution because of its insolvency. First, Giannone does not demonstrate that Paragon was insolvent on July 17, 1973, the day of contracting. But even assuming that Paragon was insolvent and had knowledge of that fact on July 17, we cannot infer an intent not to perform from the mere fact of insolvency. Thus, "(a)lthough insolvency of a buyer at the time of sale has a bearing on the seller's right to reclaim the goods after the buyer's bankruptcy, the intent not to pay is not a necessary inference from mere insolvency." In re Tate-Jones & Co., 85 F.Supp. 971, 983 (W.D.Pa.1949). In Rochford v. New York Fruit Auction Corp., 116 F.2d 584 (2d Cir. 1940), the bankrupt made credit purchases from the seller on January 3 and 4, 1939. On January 5, 1939 the company was served with a summons in a creditors' action, and "its officers then realized that it could not continue in business unless some arrangement could be effected with its creditors." Id. at 585. The court determined that the company was insolvent at the time the company made the credit purchases. But, on facts similar to those alleged here the bankrupt was insolvent when the contract was entered and the period between the time of contracting and time of entering into an arrangement with its creditors was short the court refused to find that the bankrupt acted fraudulently. Accord, In re Rader, 194 F.2d 988 (2d Cir. 1952).
 
 
 19
 In the absence of sufficient proof, either subjective or objective, of intent not to perform, we hold that Giannone has failed to demonstrate fraud in the inducement of the contract.
 
 
 20
 Giannone also contends that Paragon acted fraudulently when Paragon accepted and deposited his check to its regular operating account the same day that the Company decided to file for voluntary dissolution. He argues that Paragon must have known during the day of July 30, 1973 that it would shortly halt its operations and would not deliver the bonds. Thus, Giannone asserts that Paragon committed fraud in the performance of the contract such that the contact is voidable and may be rescinded by the defrauded party.
 
 
 21
 Granting that fraud in the performance of a contract entitles the defrauded party to rescind, Giannone would still have to prove, under the principles set forth by Donaldson and elaborated in later cases, that Paragon accepted Giannone's check with the intent not to deliver the bonds. Again, Giannone makes no such showing. He does not contend that accepting and depositing the check constitutes, in itself, a material misrepresentation. All he demonstrates is that in late afternoon of the day that Paragon received Giannone's check, the Board of Directors met and authorized the filing of a complaint for voluntary dissolution at a time when the Company was insolvent. This showing fails to establish fraud in the performance of the contract for the same reasons that he failed to demonstrate that Paragon fraudulently induced him to enter into the contract. He asks us to infer that Paragon had an intent not to perform at the time it received the check from the mere fact that Paragon decided later that day to file for dissolution. Paragon was in the business of buying and selling securities. Thus, Giannone would have us hold that continuing to operate in the normal course of business prior to the time the Company decided to cease its operations is, as a matter of law, fraudulent. This we are unwilling to do. See Rochford v. New York Fruit Auction Corp., 116 F.2d 584 (2d Cir. 1940).
 
 
 22
 Moreover, in Anderson v. Modica, 4 N.J. 383, 392, 73 A.2d 49, 53 (1950), the New Jersey Supreme Court held that, "(t)he fraud must be in the original contract or transaction and not in the nonfulfillment of the contract. . . . Such failure to perform is merely a breach of contract which may give rise to an action on the contract." Colliers on Bankruptcy, as well, states that "(r)escission has been refused where constructive intent not to pay was absent at the date of contract although present at time of delivery of the goods in question." 4A Colliers on Bankruptcy P 70.41, at 490 n.17 (14th ed. 1975). Nevertheless, without alleging that Paragon made material misrepresentations between the time of contracting and the time Paragon accepted his check, Giannone would have us hold that Paragon committed fraud in the performance of the contract which renders the contract voidable.
 
 
 23
 Giannone cites Haywood Co. v. Pittsburgh Industrial Iron Works, 163 F. 799 (W.D.Pa.1908) in support of his position. There, the bankrupt received a shipment of lumber which it had ordered several months previously. When it accepted the goods, the bankrupt had so encumbered its assets that it could have no hope of paying for the shipment. The court allowed the seller to rescind the contract and reclaim the lumber from the bankrupt estate. However, the court relied heavily on, "(t)he rapidity with which the disposition and incumbering of its property by the bankrupt followed the Giving of this order for this lumber, and its persistency in continuing that conduct up until the lumber was actually received." Id. at 800 (emphasis supplied). Thus, the bankrupt's post-contracting conduct led the court to believe that the bankrupt placed the original order with the intent not to pay upon delivery. Accepting the lumber at a time when it had no hope of paying was viewed as part of that fraudulent course of conduct. The case does not squarely stand for the proposition that fraud after contracting entitles the defrauded party to rescind. In re Levi & Picard, 148 F. 654, 655 (S.D.N.Y.1906), as directly on point. There, the court held that the seller could not rescind a contract and reclaim goods from the trustee in bankruptcy solely because the purchaser knew himself to be insolvent and unable to pay when the goods were delivered if there was no fraud in the inducement of the contract. Accord, McElwain, Hutchinson & Winch v. Barack, 103 Conn. 413, 130 A. 481 (1925). Cf. Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J.Super. 369, 382, 164 A.2d 607, 613-14 (1960) (failure to perform does not establish intent not to perform in action for fraud, nor does failure to perform shift the burden to the promisor to show lack of fraud).
 
 
 24
 We hold that Giannone has failed to sustain his burden of proving fraud by clear and convincing evidence. Giannone has not shown that Paragon acted fraudulently either in inducing him to enter into the original contract or in accepting and depositing his check the day that the Company decided to file for voluntary dissolution. Since Giannone has been unable to demonstrate fraud, he is not entitled to the equitable remedy of rescission, and his suit for reclamation must fail.
 
 IV.
 
 25
 At argument, counsel for the trustee in bankruptcy urged us to hold that section 60e of the Bankruptcy Act, 11 U.S.C. § 96(e) (1976),[6] provides the exclusive remedy for Giannone. That section provides, generally, that the customers of a bankrupt stockbroker are entitled to participate in a special fund which shall be comprised of all property held by the stockbroker from, or for the account of, all customers, except cash customers able to identify their property. If the special fund is not sufficient to pay in full the claims of all the non-cash customers, the non-cash customers become general creditors of the stockbroker. Giannone alleges that the section does not apply first, because he is a cash customer able to identify his payment and therefore specifically excluded from the reach of section 60e; and second, because Paragon acted as a principal, not as a broker, in the sale of the bonds.
 
 
 26
 We need not decide whether the transaction between Paragon and Giannone comes within the scope of section 60e. Giannone has not sought to prove that he is entitled to participate ratably in a separate fund; rather, he claims that his payment should not be part of the bankrupt estate at all. We hold only that Giannone has failed to prove his claim under that theory. The application of section 60e is not before us, and this opinion takes no position on whether he has a remedy under that section.
 
 
 27
 The judgment of the district court will be affirmed.
 
 
 
 *
 Honorable Edward N. Cahn, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The New Jersey Turnpike Bonds held a value of $50,000.00; the additional $680.83 represents earned interest. The bonds paid interest at the rate of 5.7 percent per year and carried a due date of May 1, 2013
 
 
 [2]
 Under the federal bankruptcy law, the filing of a petition for the appointment of a receiver at a time when the person is insolvent is an act of bankruptcy. Section 21(a)(5) of Title 11 U.S.C. (1976) provides:
 Acts of bankruptcy by a person shall consist of his having . . . (5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property.
 
 
 [3]
 Most of the cases dealing with reclamation based on fraud involve a seller who has sold goods on credit to a buyer who becomes bankrupt before paying for them. The seller, then, seeks reclamation of his goods. Here, the situation is somewhat reversed, although the legal analysis is similar. Instead of a seller seeking to reclaim his goods, we have a buyer (Giannone) seeking to reclaim money paid in advance for "goods" (securities) that were not delivered by the bankrupt seller (Paragon). See, e. g., In re Rhine, 241 F.Supp. 86 (D.Colo.1965) (suit for rescission of contract for fraud and reclamation of money paid to bankrupt for interests in oil and gas leases)
 
 
 [4]
 Bankruptcy Rule 810, 11 U.S.C. app. (1976), provides:
 Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses.
 
 
 [5]
 Rule 52(a), Fed.R.Civ.Pro., provides in part:
 In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; . . . Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court.
 
 
 [6]
 Section 60e of the Bankruptcy Act, 11 U.S.C. § 96(e) (1976), provides in part:
 All property at any time received, acquired, or held by a stockbroker from or for the account of customers, except cash customers who are able to identify specifically their property in the manner prescribed in paragraph (4) of this subdivision and the proceeds of all customers' property rightfully transferred or unlawfully converted by the stockbroker, shall constitute a single and separate fund; and all customers except such cash customers shall constitute a single and separate class of creditors, entitled to share ratably in such fund on the basis of their respective net equities as of the date of bankruptcy.