Jack D. KATINSKY, d/b/a Cherry Hill Radio Shack, Richard S. Vlock, Walter Steigerwald, Mayfair-Oakland Corporation, and Joseph Frumkin, Plaintiffs,

v.

**RADIO SHACK DIVISION OF TANDY CORPORATION, Defendant.**

Civ. No. 77–0462.

United States District Court,
D. New Jersey.

July 24, 1980.

Bench Opinion Oct. 16, 1980.

Greenspan & Jaffe by Leon J. Greenspan, White Plains, N.Y., Harold Brown, Boston, Mass., Abraham Kinstlinger, Newark, N.J., for plaintiff.

Arnold & Porter by Peter K. Bleakley, J. Bradway Butler, and Richard G. Stuhan, Washington, D. C., Archer, Greiner & Read by Lee M. Hymerling, Haddonfield, N.J., for defendant.

## OPINION

SAROKIN, District Judge.

Plaintiff in this action is Jack D. Katinsky, operator of the Radio Shack store in the Ellisburg Circle Shopping Center in Cherry Hill, New Jersey. Defendant, Radio Shack, Division of the Tandy Corporation, is a manufacturer and seller of electronic audio equipment.

The complaint alleges seven causes of action: first, the provisions of the Agreement that give Radio Shack control over the merchandise sold in the store and prices at which the merchandise is sold violate section 1 of the Sherman Act; second, Radio Shack has monopolized or attempted to monopolize in violation of section 2 of the Sherman Act and the New Jersey Antitrust Act; third, the "return on investment" charge provided for in the Agreement is an illegal brokerage or commission under section 2(c) of the Robinson-Patman Act; fourth, the opening of three Radio Shack stores by Radio Shack within five miles of the Ellisburg store violates oral assurances allegedly given plaintiff by a Radio Shack representative at the time plaintiff commenced operation of the Ellisburg store; fifth, Radio Shack has violated the Agreement in that it provides that Radio Shack will consult with plaintiff Katinsky with respect to "local advertising"; sixth, Radio Shack has violated the Agreement by im-

properly calculating plaintiff's share of the profits from the store; seventh, Radio Shack has failed to supply advertised merchandise to the store in violation of the New Jersey Consumer Frauds Act.

In this action, defendant Radio Shack has moved for partial summary judgment with respect to claims 1, 3, 4, 6, and 7. At oral argument, partial summary judgment was granted in favor of the defendant with respect to claims 3 and 7.

## FACTUAL BACKGROUND

Plaintiff Katinsky entered into a new Radio Shack management program known as a "joint venture". Designed to relate a store manager's compensation directly to his or her ability to generate sales, the program offered the opportunity of achieving a higher income than would normally be paid to a store manager. Under the Agreement, Radio Shack and Katinsky were entitled to take an equal share of the gross profits earned by the store after certain agreed-upon deductions. An agreement was reached, and the store opened a few days later. A written agreement was subsequently executed between the parties later that month.

The responsibilities with respect to the operation of the store are as follows: store premises are provided at a suitable location, operating expenses such as rent, taxes and insurance are the responsibility of Radio Shack, while in-store operating expenses, such as utilities, salaries and general upkeep are the responsibility of plaintiff; Radio Shack supplies all the store inventory and determines the merchandising policies of the store; plaintiff had delivered a fully refundable security deposit of $12,500; Radio Shack establishes store policies with the exception of hiring, firing, compensating and supervising any personnel working in the store; Radio Shack retains title to the store fixtures, leasehold improvements, inventory, patents, trademarks, trade names, and service names; Radio Shack is responsi-

ble for insurance on the buildings, fixtures, and inventory, while plaintiff is liable only for willful or negligent conduct to the extent not covered by insurance.

With respect to termination, the agreement provides that such may be accomplished by both parties (a) upon 90 days' written notice without cause; and (b) immediately and without notice, upon a breach of contract or commission of a "dishonest act" by the other party. Additionally, Radio Shack may terminate the contract without notice, if plaintiff fails to observe the operating policies and merchandising policies the company has established.

Shortly after the joint venture relationship began, Radio Shack decided to discontinue that particular mode of operation. Radio Shack was able to induce most of the other store managers operating under the program to convert to other programs. The plaintiff continued to operate under the terms of the Agreement, although Radio Shack had notified plaintiff that in accordance with the terms of the Agreement they wished to terminate. Plaintiff thereafter filed suit to enjoin the termination under the New Jersey Franchise Practices Act. The state court found that, for purposes of the New Jersey Franchise Practices Act, Katinsky was a "franchisee" who could not be terminated without good cause. Plaintiff has continued to operate the Ellisburg store.

## VIOLATION OF SECTION ONE OF THE SHERMAN ACT

Plaintiff contends that the defendant has engaged in a course of conduct proscribed by section 1 of the Sherman Act.[1] Pursuant to this statute, restraints of trade are prohibited only when the jurisdictional requisites of the statute are met. More specifically, the plaintiffs must show there was a contract, combination, or conspiracy in which at least two parties were involved. The defendants contend that in order for plaintiff to prevail on his section 1 allega-

---

1. Section 1 of the Sherman Act provides in pertinent part:

    Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal . . .
    15 U.S.C. § 1.

tion, he must prove there is a plurality of actors. The defendants argue that there were not at least two "independent business entities" involved in the allegedly illegal conduct. The plaintiff, on the other hand, contends that under the relationship embracing plaintiff and defendant, the plaintiff's franchise was an independent step in the distribution process under section 1 of the Sherman Act. The plaintiff also argues that the defendant is collaterally estopped from relitigating the issue of section 1 jurisdictional requisites, since the New Jersey Superior Court decided that the plaintiff was a franchisee within the parameters of the New Jersey Franchise Practices Act. This Court grants summary judgment for the defendants with respect to that issue.

## A. Collateral Estoppel

Plaintiff argues that the defendant is collaterally estopped from relitigating the issue of section 1 jurisdiction since the New Jersey Superior Court determined that the plaintiff was a Radio Shack franchisee within the meaning of the New Jersey Franchise Practices Act.

■ There are four requirements which must be met before collateral estoppel effect can be given to a prior action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. *Haize v. Hanover Co.*, 536 F.2d 576, 579 (3d Cir. 1976); *Lynne Carol Fashions, Inc. v. Cranston Printworks Co.*, 453 F.2d 1177 (3d Cir. 1972).

The requirement of identical issues has not been met. The issue sought to be precluded herein was not the same as that involved in the prior action. Although the New Jersey Superior Court examined many

of the same facts in order to reach a decision with respect to whether or not the plaintiff was a franchisee within the New Jersey Franchise Practices Act, the issue which was presented to that court is different from the issue before this Court. It was not necessary for the New Jersey court to determine whether the plaintiff was an "independent step" in the distribution process under the Sherman Act. That court made no determination which could collaterally estop this Court from deciding the merits of the issue presented. Therefore, this Court will consider whether plaintiff was an independent step in defendant's distribution process.

## B. Independent Step

■ In order to determine whether the plaintiff is an independent step in the Radio Shack distribution process, the Court must analyze the undisputed facts and the precise nature of the contractual relationship between the parties. See *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 602 F.2d 1025 (2d Cir. 1979); *Knutson v. Daily Review, Inc.*, 548 F.2d 795 (9th Cir. 1977). In *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, the court of appeals held that the question of whether two actors constituted distinct economic entities for purposes of finding a conspiracy under section 1 of the Sherman Act is to be determined by the "economic realities" of their relationship. *Id.* at 1031 n. 5. In that case, which involved two sugar brokers who alleged antitrust violations against a large sugar refiner, the court held that brokers were merely the agents of the refiners and not independent entities with whom the refiner could conspire under section 1 of the Sherman Act. The court found they "possessed none of the earmarks of an economic entity separate and distinct from Amstar."[2] *Id.* The court found that the function of the brokers

2. In this case, which involved a principal-agent relationship, the elements the court considered included:

whether the agent performs a function on behalf of his principal other than securing an offer from a buyer for the principal's product; the degree to which the agent is autho-

rized to exercise his discretion concerning the price and terms under which the principal's product is to be sold; and finally whether use of the agent constitutes a separate step in the vertical distribution of the principal's product.

*Id.* at 1031 n. 5.

was only to find potential customers for Amstar; the terms and price of a resultant sale were set solely by Amstar. *Id.*

Other courts have found that the corporate structure itself is one aspect which determines whether there are separate units or one entity. *Knutson v. Daily Review, Inc., supra* at 802; *accord, Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.,* 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); *Perma Life Mufflers v. International Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); *Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1951). *See also* P. Areeda, Antitrust Analysis 319 (2d ed. 1974).

In the instant case, the "economic realities" of the relationship between plaintiff Katinsky and defendant Radio Shack lead this Court to the conclusion that for purposes of the Sherman Act, the plaintiff is not a separate entity constituting an independent step in the Radio Shack distribution process. First, defendant has retained title to the goods which are sold in the Ellisburg store; second, Radio Shack bears the risk of loss for the goods in the Ellisburg store; and third, the management of Radio Shack, as opposed to the plaintiff, is responsible for the major and critical business decisions made with respect to the Ellisburg store. Although plaintiff has been delegated an active role in managing the store by virtue of the fact that plaintiff is responsible for the hiring, firing and supervising of the store employees, in addition to the responsibilities of salaries and general operating expenses, the role is that of a manager who has an opportunity and incentive to increase his earnings by proper management of the store and generation of sales. The crucial business decisions, such as those with respect to selection of merchandise and sales term policies, are made by Radio Shack. In addition, Radio Shack is responsible for the risk of loss and retains title not only to its trade name, trade marks and service marks, but also to the store merchandise until the moment a retail sale is consummated. The relationship between the parties cannot be characterized as one between separate economic entities in a chain of distribution; but as the parties themselves initially characterized their Agreement—one between joint venturers.

Therefore, the motion for partial summary judgment with respect to count one, violation of section 1 of the Sherman Act, is granted.

## FRAUD IN THE INDUCEMENT

Plaintiff alleges that the opening of three Radio Shack stores within five miles of his store violated oral assurances made to him by a Radio Shack representative that such openings would not occur. Plaintiff contends such action resulted in fraud in the inducement. Defendant denies that any such representations were made to the plaintiff. The defendant also contends that, even if the representative did make any such assurances, plaintiff has no cause of action because he has failed to establish the elements of fraud in the inducement.

Plaintiff must establish the following elements in order to prove fraud in the inducement under New Jersey law. The plaintiff must prove a false representation by Radio Shack, knowledge or belief by Radio Shack of the falsity, an intention that the plaintiff must act thereon, reasonable reliance by plaintiff on the false representation, and resultant damage. *In the Matter of Paragon Securities,* 589 F.2d 1240, 1242 (3d Cir. 1978); *Parker Precision Products Co. v. Metropolitan Life Insurance Co.,* 407 F.2d 1070, 1076 (3d Cir. 1969). The defendant has moved for summary judgment on this issue, alleging that there are no material issues of fact. The defendant claims first, that the plaintiff cannot show any statement was an intentionally false representation; second, that the alleged falsity of any representation must be considered in light of the circumstances under which the representation was made, such as the written agreement itself which provides for termination by either party after two years; and third, that the plaintiff's reliance on any representation was not justifiable and reasonable.

■ The plaintiff contends that there are material issues of fact which must be determined regarding fraud in the inducement; first, with respect to whether or not the false representation was made by defendant with a false state of mind, the plaintiff alleges there are facts in dispute respecting any inferences that may be drawn by the conduct of the defendant's agent, Mr. McKenzie; second, plaintiff contends that the circumstances under which the representation was allegedly made included the fact that the policy allegedly stated was not collateral, but a major policy which defendant's agent knew at that time could not be fulfilled. This is disputed by the defendant Radio Shack. Finally, the plaintiff contends that reliance was entirely justifiable under the facts and circumstances of the situation. The plaintiff relied upon the statements of the agent of the defendant and believed the representations made were within the scope of Mr. McKenzie's agency to represent.

This Court concludes that there are material questions of fact which cannot be resolved on this motion. Therefore, partial summary judgment as to this issue is denied.

## IMPROPER CALCULATION OF PLAINTIFF'S SHARE OF THE PROFITS

Plaintiff claims that he is entitled to share in Radio Shacks's "upstream" profits from the manufacturing and distribution processes based upon the Agreement between the parties wherein the parties are to share equally in the gross profits of the store after certain deductions are made. The dispute centers upon the precise calculation of the cost of goods sold. Plaintiff maintains that Radio Shack has improperly calculated the line described in the formula as "Plus Purchases" in two respects: first, the plaintiff challenges the imposition of a warehouse charge on all items shipped to his store; and second, the plaintiff disputes the actual warehouse prices filed by Radio Shack as not indicative of Radio Shack's true costs.

Acknowledging the addition of a warehouse handling charge to the computation of the cost of goods sold, Radio Shack states that the imposition of such a charge was disclosed to the plaintiff since he began operation of the store. Radio Shack also states that this charge is "disclose[d] to the penny" in each invoice.

With respect to the actual warehouse prices, Radio Shack contends that the company transfers inventory to the Ellisburg store at the same prices that they transfer inventory to every Radio Shack company store. In addition, Radio Shack contends that the contract is not ambiguous. Paragraph 6 reads in part: "The gross profit earned on the *sale of merchandise by the store* shall be divided equally between the Company and the Manager." (emphasis added) Assuming that the contract is ambiguous, Radio Shack alternatively argues that the course of conduct between the parties resolves any ambiguity in the contract.

■ Summary judgment may be granted as a matter of law where there are no material issues of fact in dispute. *Fed. R.Civ.P.* 56. In this case, the precise meaning of a term in the contract is in dispute. Ambiguity of contract terms and whether course of dealings are determinative of the meaning of the contract are issues that must be resolved at trial. *Manetas v. International Petroleum Carriers, Inc.,* 541 F.2d 408, 413 (3d Cir. 1976); *Kress, Dunlap & Lane, Ltd. v. Downing,* 286 F.2d 212, 214–15 (3d Cir. 1960). *See Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1009–11 (3d Cir. 1980). Therefore, summary judgment as to this issue is denied.

Partial summary judgment is therefore granted with respect to claim 1, violation of section 1 of the Sherman Act, and denied with respect to claims 4 and 6, violation of the restrictive covenant and improper calculation of the plaintiff's share of the profits.

(The following is a transcript of the court's bench opinion on motions for directed verdict as to those issues not resolved by the foregoing Opinion partially granting defendant's motion for summary judgment.)

In respect to the advertising claim made by the plaintiff, the contract which has been received in evidence and marked P–1 has two pertinent clauses: Paragraph 5 indicates as follows:

"Manager and company will jointly be responsible for the following items," Section C, "selection of media for local advertising and determination of intervals of local advertising."

In paragraph 6, in the determination of the allocation of profits between Mr. Katinsky and Radio Shack there is a provision for a deduction of three and half per cent of net sales for national advertising expense and three and a half per cent of net sales for local advertising expense.

The court is satisfied that there is sufficient evidence to submit the question of a breach of that clause to the jury. However, the greater difficulty arises as to whether there is any evidence upon which a jury could determine the damages, even assuming that they found a breach. The jury could conclude from the evidence that Mr. Katinsky was not afforded the opportunity to participate. But there is no evidence that if he participated there would have been any change or that his participation would have made any difference either in the selection of the media or the frequency of the media. The agreement certainly does not contemplate that he has any right of veto. It is quite evident that after he conferred and made his suggestions that Radio Shack would have had a right to ignore his suggestions based upon their particular view of the matter and certainly their expertise.

There is no dispute that the payments made by Mr. Katinsky were for advertising. There was advertising. There is no proof before the court that the advertising by Radio Shack without Mr. Katinsky's involvement was not effective. There is no proof of any damage incurred by Mr. Katinsky by reason of his failure to participate in the advertising. There is no proof that if he had participated that Radio Shack would have or should have done anything different.

Mr. Katinsky's theory is that by reason of his failure to participate as contemplated by Paragraph 5, that he should receive the advertising free. There is no proof that any damages were sustained, and even if there had been any damages sustained, there is no basis upon which the jury could award any reasonable amount to the plaintiff. The court concludes that the amount paid by Mr. Katinsky for advertising is not the proper measure of his damages. Therefore, even though the court finds that there might be a jury question as to whether or not there had been a breach of Paragraph 5, namely, Mr. Katinsky's right to participate in the selection of the media, and determination of the interval, there is no evidence before the jury from which they could conclude that there was any damage to Mr. Katinsky by reason of his failure to participate.

All of the foregoing conclusions are predicated upon the evidence adduced by Mr. Katinsky. The defendant has introduced evidence showing the method and means by which the advertising was determined and the benefit derived by Mr. Katinsky and all others in the Radio Shack chain as a result of that advertising. Furthermore, the evidence submitted by Mr. Katinsky indicates that his business has prospered, and he has failed to prove that he was in any way affected by the advertising program initiated by Radio Shack, even though there might be a finding that he did not have the opportunity to participate in that program.

For the foregoing reasons, the court will grant the motion for a directed verdict as to the claim made by the plaintiff as to the advertising.

The court will next consider the claim respecting the calculation of the cost of goods sold and ultimately the division of profits between the parties. Having reviewed the pretrial order which was entered in this matter as well as the trial memorandum which was submitted by the plaintiff, there is no contention anywhere that the profit in effect charged by Radio Shack to the joint venture constituted a breach of any fiduciary duty on the part of Radio Shack.

In respect to this particular item in the plaintiff's factual contentions, Paragraph 1 thereof alleges that defendant Radio Shack sold said merchandise to the joint venture at a price greater than the agreed upon contract price, which was to be cost of goods sold. In the trial brief submitted by plaintiff, the only argument that is made is that the inclusion of the profit was a breach of the contract terms, and in particular, a breach in respect to the definition of cost of goods sold.

Paragraph 6 of the agreement sets forth the method by which the profit and division of profits is to be calculated. The only testimony submitted by the plaintiff in reference to that term was that he had no prior conversations regarding it, and in particular, no prior conversations as to whether or not Radio Shack could impose a profit in its calculation of sales to the joint venture. He testified that he did not understand or know that such profit was to be included. He does not contend that he had a discussion in which said term was defined. He merely asserts his own private, undisclosed, unilateral understanding of that term.

However, the contract between the parties, and in particular, Paragraph 14, indicates that all accounting and recordkeeping for the joint venture shall be done by the company or by persons or firms engaged by them and shall be done in accordance with generally accepted accounting principles. The plaintiff offered no proof whatsoever as to the accepted meaning of "the cost of goods sold." There was no dictionary definition offered, no treatise, and the plaintiff did not offer any expert testimony on the subject. The only expert testimony was that of the defendant, and said expert clearly indicated that in accordance with generally accepted accounting principles, that it was appropriate, bearing in mind that various profit centers were utilized, for profit to be included in the cost of goods sold as determined in the context of the joint venture.

The court would instruct the jury that they would have a right to disbelieve and reject the expert testimony of the defendant, but with that testimony out of the case there is nothing remaining from which the jury could conclude or accept the thesis claimed by the plaintiff. At a minimum it was incumbent upon plaintiff to carry his burden of proof to offer some testimony as to the common accepted meaning of the cost of goods sold, and whether that meaning was consistent with generally accepted accounting principles. There is no testimony from plaintiff on that subject whatsoever. He did testify as to what his own private meaning was, but that is not the guide in this type of determination. The only expert testimony is that of the defendant, and even if the jury were permitted to disregard it, the plaintiff would be unable to carry his burden as to his interpretation of that clause.

Plaintiff argues that in effect this is a fraud claim; that under a joint venture or partnership concept that Radio Shack should not be permitted to make a private undisclosed profit without the knowledge and the consent of Mr. Katinsky. As already indicated, that theory was nowhere advanced either in the pleadings, in the pretrial, or in the briefs that were submitted. The only argument that was made at any of those stages was that the language of the contract, namely, the term "cost of goods sold" did not permit the inclusion of such profits. But even if breach of fiduciary duty were an issue, certainly the parties may agree that upstream profits are to be included in the cost of goods sold. Therefore, that returns the court to the very same issue: as to whether or not there has been a breach of contract and whether the term "cost of goods sold" as used in the contract contemplated the inclusion of the upstream profits.

■ Plaintiff has failed to carry the burden of producing any evidence from which the jury could conclude that it was not intended that such upstream profits be included in the calculation; therefore, in the absence of any such proof and with the testimony of defendant's expert, although recognizing that a jury would not have to accept it or believe it, the court finds that

the motion as to a directed verdict on that issue, likewise, should be granted in favor of the defendant.

As to the fraud claim, the court concludes that a jury after hearing the testimony in this case certainly could find that a representation was made, that it was false, that it was made with the intention that the plaintiff rely thereon, that the plaintiff did rely thereon by entering into the agreement, and that the stores were opened in violation of the representation, and that as a result the plaintiff sustained some damages.

As the court has already indicated, it has great difficulty with the qualifications of Mr. Katinsky as an expert on the subject of damages and his testimony on the subject of damages arising from the alleged misrepresentation; however, this is an issue that should go to the jury. They will receive the instruction requested by the defendant as to whether an expert is qualified and the weight to be given to the expert's testimony, so that in respect to the fraud count the motion for directed verdict by defendant is denied and that matter will be submitted to the jury.