649 F.2d 1236
 7 Bankr.Ct.Dec. 1172, Bankr. L. Rep. P 68,266
 In re TELTRONICS, LTD., an Illinois Corporation, Bankrupt.
Glenn R. HEYMAN, Receiver in Bankruptcy of Teltronics, Ltd.,
an Illinois Corporation, Plaintiff-Appellant,
v.
George W. KEMP, Jr., Receiver in the Circuit Court of Cook
County, Case No. 76 CH 7741, Defendant-Appellee.
 No. 80-1434.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 25, 1980.
Decided June 2, 1981.
 
 John H. Redfield, Chicago, Ill., for plaintiff-appellant.
 James P. Connelly, Chicago, Ill., for defendant-appellee.
 Before SPRECHER and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*
 BAUER, Circuit Judge.
 
 
 1
 Drawn for battle, a state court receiver and a bankruptcy trustee challenge each other's power over funds of the bankrupt, Teltronics, Ltd. The issue here is whether money held by a state court receiver under the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 1211/2, § 261 et seq., is property of the bankrupt's estate and thus subject to surrender to the bankruptcy trustee. The district court held that the money was not the "property" of the bankrupt under the Bankruptcy Act, 11 U.S.C. § 11(a)(21)[1], because it was acquired by fraud. We affirm.
 
 
 2
 * Dennis Roberts, doing business as Teltronics, Ltd., defrauded thousands of consumers when they responded to magazine advertisements offering digital watches. The watches were never delivered. Roberts collected about $1,700,000 in prepaid orders and absconded with $1,300,000, still not recovered. He was later found guilty of fifty counts of mail fraud.[2] 18 U.S.C. § 1341.
 
 
 3
 On December 26, 1976, the Illinois Attorney General filed an action in the Circuit Court of Cook County under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), Ill.Rev.Stat. ch. 1211/2, § 261 et seq., against Dennis Roberts, Teltronics, and other defendants.
 
 
 4
 Section 267 of the Act authorized the Attorney General to seek an injunction in state court to restrain violations of the Act. Id. at § 267. Section 267 also permits the court to appoint a receiver. Id. Circuit Court Judge O'Brien entered a preliminary injunction, freezing about $836,000 held in Teltronic's checking accounts. On January 13, 1977, he appointed defendant-appellee George Kemp as receiver and placed the funds in his possession.
 
 
 5
 On January 24, 1977, certain business creditors of Roberts d/b/a Teltronics filed a petition for involuntary bankruptcy, asserting claims of approximately $15,000. Bankruptcy Judge James appointed plaintiff-appellant Glenn Heyman as receiver in bankruptcy on December 5, 1977. On December 20, 1977, Teltronics was adjudicated a bankrupt.
 
 
 6
 On January 20, 1978, the bankruptcy receiver filed a complaint against the state court receiver, seeking turnover of all assets, books, and records of the bankrupt. On June 26, 1979, Judge James entered a judgment in favor of the bankruptcy receiver and ordered the state court receiver to turn over the funds, books, and records. The district court reversed on review, and the bankruptcy trustee appeals.
 
 II
 
 7
 * The Bankruptcy Act authorizes the bankruptcy court to order a person in possession of property of the bankrupt to turn that property over to the trustee. In particular, section 2(a)(21) of the Act gives the bankruptcy court jurisdiction to:
 
 
 8
 (r)equire receivers appointed in proceedings not under this title to deliver the property in their possession or under their control to the receiver or trustee appointed under this title
 
 
 9
 11 U.S.C. § 11(a)(21). That power, however, is limited, by definition, to property that is part of the bankrupt's estate. As noted by the district court, it is settled that property obtained by fraud of the bankrupt is not part of the bankrupt's estate. Nicklaus v. Bank of Russellville, 336 F.2d 144, 146 (8th Cir. 1964); In re Paragon Securities Co., 589 F.2d 1240, 1242 (3d Cir. 1978); 4A Collier, Bankruptcy P 70.41 at 484 (14th ed. 1978) (hereinafter "Collier"). Roberts' conviction of mail fraud collaterally estops Teltronics from contesting that fraud occurred here; in any event, appellant does not seriously question the finding of fraud. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 331, 37 S.Ct. 506, 61 L.Ed. 1148 (1979); Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 525 (1917). This appeal, then, appears quickly resolved: since the property is not part of the bankrupt's estate, the bankruptcy trustee has no power over it.
 
 
 10
 Appellant, however, launches several attacks on the state court receiver's powers. Appellant asserts that Roberts' fraud also vitiates the state receiver's right to the property, since he represents the bankrupt. He then argues, citing Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876 (1940), that only the Bankruptcy Court has jurisdiction to adjudicate any controversy over the money.
 
 
 11
 Appellant's assault founders on its first step. In contrast to the Bankruptcy Act, a receiver under the Illinois Consumer Fraud Act is expressly empowered to administer funds obtained by fraud. Section 268 gives the receiver power to "sue for, collect, receive and take into his possession" property "derived by means of any practice declared to be illegal and prohibited by this Act." Ill.Rev.Stat. ch. 1211/2, § 268. Illegal practices under the Act include frauds sufficient to give rise to a common law right to rescission of contract. Id. at § 262; cf. Beard v. Gress, 90 Ill.App.3d 622, 46 Ill.Dec. 8, 413 N.E.2d 448 (1980). The state court receiver thus has powers over different funds than the bankruptcy receiver does.
 
 
 12
 The rule that property obtained by fraud is not part of the bankrupt's estate represents the policy that property should remain in the hands of its rightful owners, no matter how legitimate the claims of creditors. In re Paragon Securities Co., 589 F.2d at 1242. The Illinois Consumer Fraud Act furthers this end by establishing a receiver to manage the claims of the defrauded rightful owners. It can hardly be said that the receiver is powerless to give the consumers their money back because of the very fraud which took it from them. The bankruptcy rule simply does not apply to a receivership under the Consumer Fraud Act.
 
 
 13
 Thompson v. Magnolia Petroleum Co., if it applies at all here, militates in favor of our decision. While holding that the Bankruptcy Court may determine disputes over property in the bankrupt's estate, Thompson also held that the court's jurisdiction should not be exercised when the dispute concerns purely local questions. 309 U.S. at 483-84. Section 268 of the Consumer Fraud Act has not yet been interpreted by the Illinois courts. If the trustee wishes to contest the receiver's power under that section, he should do so in the state courts.[3]
 
 B
 
 14
 Retreating from a frontal attack on the state court receiver's powers, appellant next attempts to ambush Nicklaus v. Bank of Russellville, 336 F.2d 144 (8th Cir. 1964), the leading case establishing that the bankrupt's estate does not include property obtained by fraud. The bankrupt in Nicklaus had swindled some bonds from the Bank of Russellville. By the time of bankruptcy, however, the bank had gotten the bonds back. The bank answered, in response to the bankruptcy trustee's turnover suit, that it possessed the very bonds the bankrupt had swindled. Id. at 146. Here the property cannot be so easily identified. Since Roberts deposited the money in several bank accounts over a period of time, a customer can only roughly identify which money is his or hers. According to appellant, these circumstances violate the tracing rule of Cunningham v. Brown, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924); see 4A Collier P 70.41 at 498.
 
 
 15
 Cunningham held that a rescission for fraud creates a resulting trust in favor of the defrauded person. However, to recover the trust funds, the defrauded person must be able to trace his money to where the cestui que trustent applied it, the Court held. 265 U.S. at 11, 44 S.Ct. at 426.
 
 
 16
 The Court further held that tracing money to a fund "wholly made up of the fruits of the frauds perpetrated against a myriad of victims" was insufficient. Id. at 13, 44 S.Ct. at 427. According to the Court, a victim had to follow his actual deposits into and out of a bank account. Id. at 11, 44 S.Ct. at 426. If the victim was unable to so identify his funds, he had to participate as a general creditor in the bankrupt's estate. These stringent requirements have defeated the claims of consumers suing as a class to rescind contracts for fraud. See e. g., In re Kennedy & Cohen, Inc., 612 F.2d 963 (5th Cir.), cert. denied, -- U.S. --, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980); In re Faber's, Inc., 360 F.Supp. 946, 948 (D.Conn.1973).
 
 
 17
 Even Cunningham, however, recognized that the tracing rule could be avoided if abandoning the rule resulted in equal treatment of the defrauded customers. 265 U.S. at 13, 44 S.Ct. at 427. Cunningham considered applying an exception that
 
 
 18
 where a fund was composed partly of a defrauded claimant's money and partly of that of the wrongdoer, it would be presumed that in the fluctuations of the fund it was the wrongdoer's purpose to draw out the money he could legally and honestly use rather than that of the claimant, and that the claimant might identify what remained as his res and assert his right to it by way of an equitable lien on the whole fund, or a proper pro rata share of it.
 
 
 19
 265 U.S. at 12, 44 S.Ct. at 426.[4] The Court refused to apply the exception because, under the circumstances, it would violate the policy of equality. Some investors learned of the scheme prior to bankruptcy, rescinded their contracts, and received full refunds from Charles Ponzi, the bankrupt.[5] The available funds were depleted before all the investors were satisfied. Id. at 7-9, 44 S.Ct. at 425. Since all the funds were obtained by fraud, to allow some investors to stand behind the fiction that Ponzi had legitimately withdrawn money to pay them "would be carrying the fiction to a fantastic conclusion." Id. at 13, 44 S.Ct. at 427. If the exception were applied, some investors would have kept full refunds of their money, while others got nothing. The Court refused to apply the exception because it would violate the fundamental policy that "equality is equity (t)his is the spirit of the bankrupt(cy) law." Id.
 
 
 20
 The present case also calls for an exception to the tracing requirement. The funds held by the state court receiver are those of the consumers. Fraud is established. Unlike the common law exception rejected in Cunningham, however, the Illinois Consumer Fraud Act provides a mechanism by which the consumers will share equally in the fund.[6] The receivership is expressly designed to fairly distribute a fund among customers. Ill.Rev.Stat. ch. 1211/2, § 267. Application of the Illinois Consumer Fraud Act thus realizes the equitable result sought by Cunningham. Where such a procedure is provided, an exception to the tracing requirement should be recognized. Otherwise, as noted in Paragon Securities, the creditors would obtain a windfall at the expense of the defrauded customers, who did not enter into their contracts with a creditor's acceptance of the risk of failure of the debtor. 589 F.2d at 1242.
 
 
 21
 Appellant rejoins that the Illinois statute creates an unlawful preference for one group of creditors. In practice, however, the statute does no such thing. Since the monies were obtained by fraud, the receiver administers monies that are not properly part of the bankrupt's estate. Nicklaus. See also, In re Telemart Enterprises, Inc., 524 F.2d 761, 764 (9th Cir. 1975) (section 2-702(2) of California's Uniform Commercial Code, entitling seller to reclaim goods from a buyer who bought them on credit while insolvent, does not create a state priority; remedy is the same as the common law remedy of rescission for fraud); accord, In re Federal's Inc., 553 F.2d 509, 518 (6th Cir. 1977) (same result, court holds rights of defrauded seller under § 2-702 are "direct descendents of those historically preserved under the common law and so (are) respected by the Bankruptcy Act"), and In re PFA Farmer's Market Ass'n., 583 F.2d 992 (8th Cir. 1978). Cases to the contrary cited by the appellant involved no fraud or only alleged fraud. See, e. g., Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (preference created in favor of state); Lusk Corp. v. Arizona State Tax Commission, 462 F.2d 187 (9th Cir. 1972) (same); Elliott v. Bumb, 356 F.2d 749 (9th Cir.), cert. denied, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966); In re Faber's, Inc. (no proven fraud); In re Kennedy & Cohen, Inc. (same); In re Lustron Corp., 184 F.2d 789 (7th Cir. 1950) (no fraud).
 
 
 22
 Appellant further protests that the customers should be treated as general creditors, as the investors were ultimately regarded in Cunningham.[7] To the extent that Cunningham could be interpreted to allow a bankruptcy trustee to proceed on behalf of defrauded customers, our decision in Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135, 140 (7th Cir.), cert. denied, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969)[8] authorizes an election of remedies. Accord, In re Rhine, 241 F.Supp. 86, 96 (D.Colo.1965); Nicklaus, 336 F.2d at 140; cf. 3 Collier P 60.18 at 841-42 (14th ed.). Here the Attorney General sued in the consumers' right "prior to the filing of the petition for bankruptcy rather than filing any claims against the bankrupt or electing to treat the bankrupt as (their) debtor." Nicklaus, 336 F.2d at 140. The customers therefore did not have to file as general creditors of the bankrupt.
 
 C
 
 23
 Appellant fires a closing salvo at the Illinois Consumer Fraud Act, using the Supremacy Clause as his weapon. Appellant's fire misses.
 
 
 24
 Section 268 of the Illinois Consumer Fraud Act contains broad language regarding the administration of receivership. The statute provides that
 
 
 25
 Any person who has suffered damages as a result of the use or employment of any unlawful practices and submits proof to the satisfaction of the court that he has in fact been damaged, may participate with general creditors in the distribution of the assets to the extent he has sustained out-of-pocket losses. In the case of a partnership or business entity, the receiver shall settle the estate and distribute the assets under the direction of the court. The court shall have jurisdiction of all questions arising in such proceedings and may make such orders and judgments therein as may be required.
 
 
 26
 Ill.Rev.Stat. ch. 1211/2, § 268. The trustee particularly aims at the language regarding "general creditors" in arguing that the statute directly and substantially conflicts with the Bankruptcy Act.
 
 
 27
 We need not, however, entrench ourselves for battle between the two statutes. The state court receiver does not administer any funds subject to the bankruptcy laws because they were all obtained by fraud. His powers, therefore, do not conflict with those of the bankruptcy trustee. Under the circumstances of this case the two statutes can peacefully coexist.
 
 D
 
 28
 Appellant's final foray is to attempt to regain possession of Teltronics' books and records. We, however, agree with the district court's conclusion that the state court receiver hold the materials. The court stated:
 
 
 29
 (s)ubstantial steps in administering the funds such as leasing space, compilation of lists of consumer claimants, investment of the funds into U.S. Treasury bills, and taking inventory of property found on Teltronics' premises have already been conducted by the state court receiver. We believe that allowing the state court proceeding to proceed as if uninterrupted by the bankruptcy proceedings will protect the funds from further unwarranted depletion.
 
 
 30
 In re Teltronics, Ltd., No. 77 B 526, memorandum opinion (N.D.Ill. March 18, 1980) (footnote omitted).
 
 The decision of the district court is
 
 31
 Affirmed.
 
 
 
 *
 The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 All references are to the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 1 et seq. That Act has since been superceded by the Bankruptcy Code of 1978, 11 U.S.C.A. § 1 et seq. (West 1979). The older act controls because this case was commenced prior to October 1, 1979, the new Code's effective date. Pub.L.No.95-598, § 403(a), 92 Stat. 2549, 2683 (1979)
 
 
 [2]
 United States of America v. Dennis L. Roberts, a/k/a Jack Rodine, a/k/a Rodine, a/k/a Floyd Highstrom, No. 77 CR 53, judgment order (N.D.Ill. July 15, 1977)
 
 
 [3]
 Appellant cites several old Illinois cases holding that the receiver takes no better title to property than the person subject to the receivership. E. g. Hunt v. Green, 271 Ill.App. 228, 234 (1933); Nartzik v. Ehman, 191 Ill.App. 71, 83 (1914); In re Burgh, 7 F.Supp. 184, 187 (N.D.Ill.1933). These cases do not apply to a receivership under the Illinois Consumer Fraud Act, since the Act gives the receiver powers in addition to what he had at common law
 Also inapplicable here is Morris Plan Industrial Bank of New York v. Schorn, 135 F.2d 538 (2d Cir. 1943). There the bankrupt was denied discharge because she did not account for funds embezzled from her employer. 11 U.S.C. § 32(c) (7). The owner in Morris Plan, therefore, intervened at a much later stage of bankruptcy proceedings. As the court pointed out, it did not matter "whether or not the Simmons Company (the owner) would attempt to, or could, trace the specific funds and reclaim them from the bankrupt estate." Id. at 540. Rather, the case turned on the bankrupt's independent duty to account for any "deficiency of assets to meet his liabilities," 11 U.S.C. § 32(c)(7), including converted funds. Here, however, that duty is not involved because the representative of the true owners now possesses the funds.
 
 
 [4]
 The rule of Knatchbull v. Hallett, L.R. 13 Ch.D. 696, followed in National Bank v. Insurance Co., 104 U.S. 54, 68, 26 L.Ed. 693 (1881)
 
 
 [5]
 Ponzi had defrauded millions of dollars from thousands of persons by promising them $150 in 90 days for every $100 lent to him. He claimed to be investing the money in international postal money coupons; in fact, he was merely paying off earlier lenders with later lenders' money, chainletter fashion. When news broke of the scheme, many investors called in their "loans" at face value
 
 
 [6]
 Ill.Rev.Stat. ch. 1211/2, § 268 provides in part:
 When a receiver is appointed by the court pursuant to this Act, he shall have the power to sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, records, documents, papers, choses in action, bills, notes and property of every description, derived by means of any practice declared to be illegal and prohibited by this Act, including property with which such property has been mingled if it cannot be identified in kind because of such commingling, and to sell, convey, and assign the same and hold and dispose of the proceeds thereof under the direction of the court. Any person who has suffered damages as a result of the use or employment of any unlawful practices and submits proof to the satisfaction of the court that he has in fact been damaged, may participate with general creditors in the distribution of the assets to the extent he had sustained out-of-pocket losses.
 
 
 [7]
 Cunningham held that the investors who received refunds prior to the date of the bankruptcy petition had to turn over their money to the bankruptcy trustee and file claims as general creditors
 
 
 [8]
 Buttrey involved a double fraud: the defendant allegedly defrauded the bankrupt, who in turn was defrauding its customers. The trustee there sought to set aside the money transferred by the bankrupt to the defendant under section 70(e) of the Bankruptcy Act, 11 U.S.C. § 110(e)