**Robert LeMON, Plaintiff,**

v.

**John L. ZELKER, Superintendent of Green Haven Correctional Facility, Stormville, New York, et al., Defendants.**

**No. 71 Civ. 5241.**

United States District Court,
S. D. New York.

May 31, 1972.

Robert LeMon, pro se.

Louis J. Lefkowitz, Atty. Gen., of N. Y. by Seth Greenwald, Asst. Atty. Gen., New York City, for defendants.

MOTLEY, District Judge.

### Memorandum Opinion And Order

Plaintiff, an inmate of Green Haven Correctional Facility, brings this civil rights action challenging certain conditions of his confinement. His complaint alleges essentially five types of unconstitutional conduct by defendants: 1) the opening and inspection of his legal correspondence, 2) threatening plaintiff with transfer to another correctional facility during the pendency of this suit, 3) not mailing certain legal correspondence to the Judicial Conference of the United States, 4) preventing plaintiff from communicating by mail with his sister, Mrs. Susan Allen and, 5) preventing plaintiff from communicating by mail with a daughter who is living with his common-law wife. Defendants now move for summary judgment on all of these causes of action pursuant to Rule 56, Fed.R.Civ.P.

Summary judgment can be granted for defendants on plaintiff's first two allegations listed above. Richard L. Middlebrook, head correctional clerk at Green Haven, admits in his affidavit that plaintiff's legal correspondence is inspected, though denying the use of so subtle a means of doing so as "steaming" it open. Under the law in this Circuit "prison officials may open and read all outgoing and incoming correspondence to and from prisoners." Sostre v. McGinnis, 442 F.2d 178, 201 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). Defendants are thus entitled to summary judgment on this charge.

Assistant Attorney General A. Seth Greenwald affirms that "[p]laintiff has not been or threatened with a transfer to another correctional facility due to any of his past activities." Plaintiff does not controvert this assertion in his reply affidavit. Since plaintiff is not being threatened with transfer for engaging in constitutionally protected activities, defendants are entitled to summary judgment on this charge also.

The next two claims—preventing correspondence with the Judicial Conference and with plaintiff's sister—involve disputed issues of fact, with defendants contending that they have not intercepted such written communications and plaintiff insisting they have. In this posture, these contentions cannot be resolved by summary judgment.

As to plaintiff's fifth contention —that he is prevented from communicating with a daughter who lives with his common-law wife—we grant summary judgment for plaintiff on the undisputed facts now before us. Though Rule 56 does not specifically empower the court to grant summary judgment for the non-moving party, it has been consistently held that it may do so. See e. g. Time, Inc. v. Bernard Geis Associates, 293 F.Supp. 130 (S.D.N.Y.1968); Briscoe v. Compagnie Nationale Air France, 290 F.Supp. 863 (S.D.N.Y. 1968).

Plaintiff has asked prison authorities for permission to correspond with a daughter born during his common-law marriage. His probation report mentions two sons born to him during a prior, legal, marriage, but, while it reflects the fact that he lived with a com-

mon-law wife, it does not specify if any children were born of this union. Therefore, "[i]n compliance with the normal procedure of business", prison officials "wrote to plaintiff's common-law wife requesting her permission to allow plaintiff to correspond with these children and to send photostatic copies of birth certificates to ascertain that these were her children" (Middlebrook affidavit, p. 2).[1] She did not reply, and for that reason plaintiff's daughter was not approved as a correspondent.[2]

Defendants have attached to their moving affidavits a copy of the regulations they presumably relied on for this decision. Department of Correctional Services Administrative Bulletin # 20 (January 31, 1972) Rule 2 states:

"Correspondence with specific persons will be subject to identification by you of the individual by name and address, purpose of the correspondence, and verification from the individual that he or she desires to correspond with you.

\* \* \* \* \* \*

"Special permission must be obtained by you from the Superintendent for correspondence with unrelated minors as parental or guardian permission is necessary. . . ." (¶ 3)

Page four of that administrative bulletin contains the following:

"*Reference Rule 2:* Upon an inmate's application to correspond with a person, a form letter should be sent to the person to determine relationships or associations with the inmate, whether the person desires to correspond with the inmate, and to inquire regarding the factors in the third paragraph of Rule 2."

Plaintiff has contended all along that he is the father of this girl and that his name appears as such on her birth certificate. Defendants have no proof that she is *not* his daughter.

■ It is not clear whether defendants are contending 1) that plaintiff's daughter is an "unrelated minor" and plaintiff therefore needs the mother's permission before writing in accordance with their Rule 2, or 2) that though the girl is in fact plaintiff's natural daughter (and therefore related to him), the fact of her illegitimacy alone necessitates the mother's approval of their correspondence.[3] Neither contention, we find, is a constitutionally valid reason for denying plaintiff's First Amendment rights of freedom of expression.

■ Assuming for the moment that the minor whom plaintiff wishes to communicate with is indeed unrelated to him, we fail to see any governmental interest which requires approval by the minor's parent or guardian before prison officials will permit free correspondence. Obviously, persons who are not prison inmates can communicate by mail with whomever they choose without written permission from anyone. Defendants cannot limit these First Amendment rights a prisoner would have enjoyed if he had not been impris-

1. Plaintiff states in his reply affidavit that two sons of this common-law marriage have been included on his correspondence list (¶ 5).

2. Middlebrook also states: "The Probation Report shows that this common-law wife has a long criminal record and also that she had moved without letting the inmate know her present whereabouts, inasmuch as she was scared of him. Our records indicate that at one time he was arrested for felonious assault at the request of this woman." Plaintiff in reply disputes the contention that his wife had moved. Whether true or not, we fail to see the relevance of any of these facts to plaintiff's right to communicate with his daughter. If the wife's address actually was unknown, though, the prison officials were imposing an impossible task on plaintiff by asking him to obtain her permission before he could write to his daughter.

3. We do not understand defendants to say that the daughter does not desire to correspond with plaintiff, since it is uncontested that she has written to him in prison (Complaint ¶ 7).

oned unless the restrictions are "related both reasonably and necessarily to the advancement of some justifiable purpose of imprisonment." Carothers v. Follette, 314 F.Supp. 1014, 1024 (S.D.N.Y. 1970) (Mansfield, D. J.), (citations omitted). See also Sostre v. McGinnis, *supra,* 442 F.2d at 200; Morales v. Schmidt, 340 F.Supp. 544 (W.D.Wis. 1972).

We fail to see how permitting inmates to correspond freely with any unrelated minors would hamper prison order or the inmates' rehabilitation in the slightest. Prison authorities retain the power to intercept mail to such unrelated minors containing contraband, escape plans or other criminal schemes. The only conceivable reason defendants might have for requiring parental approval for this correspondence is the fear that inmates will send threatening or obscene letters to these minors. But "this is not their function—they are not the protectors of the sensibilities of the public which can protect itself." Palmigiano v. Travisono, 317 F.Supp. 776, 788 (D.R.I. 1970). Parents can adequately intercept any mail from prison inmates they wish to keep from their minor children.

The absurdity of defendants Rule 2 in operation is illustrated by the instant case. The prison authorities would require plaintiff to obtain documentation from a woman they contend cannot be located in order to send a child a birthday card (see Complaint, ¶ 7). There is no indication that plaintiff will be

threatening or obscene; all indications are to the contrary. And his daughter does wish to communicate with plaintiff, see note 3, *infra.*

Even more remarkable is the fact that defendants do not apparently dispute plaintiff's contention that this child actually is his daughter. Instead, they seem to premise their refusal to permit correspondence on the ground that this daughter was born of a common-law union, and is therefore illegitimate, stating: "In the absence of permission of their mother, plaintiff cannot communicate with minor children who are not *legally* his offspring." (Greenwald affidavit, ¶ 3) (emphasis added). This notion is both medieval and, more pertinently, unconstitutional. See the cases cited above, and, in addition, Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). It also runs counter to the protection and encouragement the law accords family ties. Stanley v. Illinois, *supra,* and cases cited therein.[4]

For the above reasons the court hereby permanently enjoins defendants, their agents and employees from preventing plaintiff from communicating by mail with any of his children, including his daughter, or with any unrelated minor, so long as he abides by the other valid regulations governing prison correspondence.[5]

So ordered.

---

4. Furthermore, Rule 2 of the administrative regulations reproduced above speaks only of "unrelated minors." If, as defendants seem to concede, plaintiff is actually the girl's father, then this regulation by its own terms would not authorize defendants to demand the moth-

er's permission before allowing correspondence.

5. Plaintiff contends that these guarantees were provided in an opinion of Judge Curtin in the Western District of New York. In the view we take of the case we did not decide this question.