Jose GOLDBAUM, Plaintiff,

v.

BANK LEUMI TRUST COMPANY OF
NEW YORK, Defendant.

No. 80 Civ. 6294 (KTD).

United States District Court,
S. D. New York.

July 23, 1982.

Opert & Herisko, Cambridge, Mass., for plaintiff; Lawrence R. Opert, Cambridge, Mass., of counsel.

Gottesman, Wolgel, Smith & Secunda, New York City, for defendant; Harold H. Wolgel, Lawrence L. Flynn, New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

In this diversity action, Jose Goldbaum, a citizen and resident of Chile, seeks to recover $200,000 for alleged water damage to certain rare medals and coins he kept in two safety deposit boxes at a branch of defendant Bank Leumi Trust Company ("Bank Leumi"), a New York banking corporation. Plaintiff alleges two causes of action: one for breach of the bank's alleged warranty to safely maintain the boxes, and another for damage caused by defendant's negligence. According to the complaint, the fire prevention sprinkler system malfunctioned at the branch where plaintiff had stored his coins in safety deposit boxes. This allegedly resulted in water flooding plaintiff's boxes and damaging his coins.

Without disputing the fact that its sprinkler system failed and flooded plaintiff's safety deposit boxes, Bank Leumi moves for summary judgment arguing that the lease agreement under which plaintiff used the boxes specifically excluded the bank's liability for any water damage. Furthermore, defendant argues that Goldbaum agreed in the lease not to use the safe deposit boxes for any purpose other than to keep securities, jewelry and valuable papers and not to keep money there. Defendant argues that to the extent plaintiff's coins are money and not "jewelry," plaintiff has no liability whatsoever since such property would fall entirely outside the scope of the lease agreement. To the extent the coins may be considered "jewelry," defendant urges that its liability is limited to the exercise of reasonable care in preventing access to the safe deposit boxes by unauthorized persons, a duty which purportedly was fulfilled in this case.

### I.

It is undisputed that two safe deposit box leases were entered into between plaintiff's agent and defendant's predecessor in interest. These lease agreements set forth all the terms and conditions of plaintiff's use of the boxes. See defendant's Exhibits C and D. The portion of both agreements which has significance here provides:

3. The safe deposit box is not to be left unlocked at any time except when the container is removed during authorized access. No unauthorized opening of the box shall be inferable from proof of partial or total loss of the contents, and no negligence of Lessor shall be inferred from proof of such partial or total loss. Lessor assumes no obligations beyond the exercise of reasonable care in the operation and maintenance of the vault and Lessee assumes all other risks. Lessors shall have no liability or loss from fire, water, radiation, the forces of nature, war, strikes, riots or civil commotion however caused.

4. The box is leased to the Lessee for the purpose of keeping securities, jewelry and valuable papers only, and the Lessee agrees not to use the box for any other purpose, including keeping money therein. It is expressly understood and agreed that the duty of the Lessor with respect to any such securities, jewelry and valuable papers is limited to the exercise of reasonable care in preventing access to the box by unauthorized persons, and that under no circumstances shall the Lessor be liable for the loss or destruction of any other property, including money, alleged to have been placed in the box.

Under New York law, a bank may engage in the safe deposit business by rent-

ing boxes under its own terms and conditions. *See* N.Y. Banking Law § 96(3)(b) (McKinney's 1971). The relationship of a bank to the lessee of a safe deposit box is generally considered to be that of bailee to bailor. *See Sagendorph v. First National Bank of Philmont*, 218 App.Div. 285, 218 N.Y.S. 191 (3d Dep't 1926); Williston on Contracts § 1045, pp. 958–60 (3d ed. 1967). A bailee, in this case Bank Leumi, is generally held responsible for loss or damage due to its own negligence unless the parties agree to another standard of liability. *See Consolidated Laundries Corp. v. Regis Operators, Inc.*, 26 A.D.2d 383, 274 N.Y.S.2d 815 (3d Dep't 1966); *Klar v. H. + M. Parcel Room*, 270 App.Div. 538, 61 N.Y.S.2d 285 (1st Dep't 1946). The parties to a bailment contract are free to limit expressly the bailee's common law obligations. *Gramore Stores, Inc. v. Bankers Trust Co.*, 93 Misc.2d 112, 402 N.Y.S.2d 326 (Sup.Ct.1978). For instance, in *Sagendorph v. First National Bank of Philmont*, the plaintiff leased a safety deposit box at the defendant's bank which was subsequently burglarized. At the time of rental, the bank delivered a receipt to the plaintiff which provided: "The First National Bank of Philmont will give to property left for safe keeping the same care that it does its own property, but beyond that does not assume responsibility." The court held that this clause governed the bank's liability and the portions of the complaint alleging that the bank failed to apprehend the burglars and to insure plaintiff's property were stricken. The bank's liability was held to be governed by the negligence standard set forth in the receipt.

■ In another New York case, *Radelman v. Manufacturers Hanover Trust Co.*, 61 Misc.2d 669, 306 N.Y.S.2d 638 (App. Term 2d Dep't 1969), a court again followed the express terms of the safety deposit box lease to determine the standard of liability for the bank. The prohibition in the lease against depositing money in the box was found to be valid and enforceable. It is not clear from the case as reported, however, whether this meant that the plaintiff could not recover from the bank for moneys lost, stolen or damaged in the box or whether the ruling simply prohibited plaintiff from depositing money in the box in the first place. Nevertheless, what is clear from *Radelman* and from other New York cases is that lease agreements will be enforced provided they are not unconscionable, offensive to public policy nor the product of fraud or undue influence. *See also, Klar v. H. + M. Parcel Room*, 270 App.Div. at 541; 61 N.Y. S.2d at 288. *See generally*, 9 N.Y.Jur.2d § 60–62 (1980).

■ Relying on these general principles, Bank Leumi asserts that the parameters of its liability under the lease agreements with plaintiff could not be clearer: "Lessors shall have no liability for loss from fire, water, radiation, the forces of nature, . . . . [etc.]." Because the plaintiff's coins were damaged by water, it is urged that the bank is not liable under the express terms of the lease agreements, even if the bank could be found to have been negligent in some way.

■ Defendant's argument has two defects which on the record before me precludes summary judgment in its favor. First, as a matter of contract interpretation, it is not·clear from the face of the lease whether loss from "water" is meant to cover only rainstorms, floods and other natural phenomenon or whether it also includes water from defective plumbing or a malfunctioning sprinkler system. This ambiguity may, depending upon the proof at trial, have to be construed to exclude the latter meaning. Liability exclusions in bailment agreements, where ambiguous, are to be interpreted against the bailee, especially where it drafted the agreement. "[T]o limit the liability of a defendant on account of his own negligence the language must be explicit, and . . . the inference is against that result." *Rapp v. Washington Storage Warehouse & Van Co.*, 75 Misc. 16, 18, 134 N.Y.S. 855, 856 (City Ct. 1911); *see also, Zayenda v. Spain & Spain, Ltd.*, 201 Misc. 963, 109 N.Y.S.2d 87, *aff'd*, 280 App.Div. 752, 113 N.Y.S.2d 115 (1st Dep't 1952). Second, even assuming the term in the lease

covers both natural and man-made sources of "water," this exclusion from liability may not necessarily save the bank from its own negligence. Clauses which attempt to exclude liability for damage due to factors beyond man's control will not exclude a defendant from liability for his negligent failure to avoid damage. *See Bean v. Ford,* 65 Misc. 481, 119 N.Y.S. 1074 (1909); *Sinischalchi v. Baslico,* 92 N.Y.S. 722 (Sup.Ct. App.Term 1905).

Accordingly, on the basis of the record before me, I do not believe the lease agreement between the parties necessarily immunizes the defendant from liability for its negligence. If plaintiff can prove at trial that his coins fall within the meaning of the term "jewelry" in the lease agreement and that the bank failed to deliver this property in an undamaged condition upon demand then the burden of production of proof shifts from bailor to bailee to establish bailee's non-negligence. *Singer Co. v. Stott & Davis Motor Exp., Inc.,* 79 A.D.2d 227, 436 N.Y.S.2d 508 (4th Dep't 1981); *see also, Leather's Best, Inc. v. S. S. Mormaclynx,* 451 F.2d 800 (2d Cir. 1971) (applying New York law).

The motion for summary judgment is denied.

SO ORDERED.