**PURO INTERNATIONAL OF NEW JERSEY CORP., Plaintiff,**

v.

**CALIFORNIA UNION INSURANCE COMPANY, Defendant.**

**CALIFORNIA UNION INSURANCE COMPANY, Third-Party Plaintiff,**

v.

**T & T REALTY COMPANY, Third-Party Defendant.**

**No. 84 CIV. 8054 (PKL).**

United States District Court, S.D. New York.

March 28, 1986.

Lowenthal, Landau, Fischer & Ziegler, P.C., New York City (Stephen R. Sugrue, of counsel), for plaintiff.

Gwertzman, Pfeffer, Toker & Lefkowitz, New York City (Roberta Burman, of counsel), for defendant.

LEISURE, District Judge:

Plaintiff Puro International of New Jersey Corp. ("Puro") processes raw down and feathers, and deals in finished down products such as jackets, vest, comforters and pillows. Puro has brought this action against its insurer, defendant California Union Insurance Co. ("Cal-Union"), to recover under its insurance policy for damages to Puro's down and feather inventory caused by sprinkler leakage.[1] Cal-Union, while not disputing the fact that plaintiff's sprinkler system failed and that its goods were damaged, has moved for partial summary judgment, arguing that the terms of

---

1. Federal subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. Cal-Union has impleaded T & T Realty Company, the alleged owner of the premises where Puro's goods were damaged. This third-party action has no bearing on the motions presently before the Court.

Puro's insurance policy limit recovery for "water damage" to $100,000. Plaintiff opposes defendant's motion and has filed a cross-motion for summary judgment, arguing that the policy places no limit on recovery for "sprinkler leakage damage," which Puro characterizes as a distinct peril not encompassed by its policy's limitation on "water damage." Alternatively, Puro argues that the language of the limitation clause is materially ambiguous, and that plaintiff should be given the opportunity to demonstrate the distinction between "water damage" and "sprinkler leakage damage" at trial.

## I

It is undisputed that Puro purchased insurance policy number ZPM010212 ("policy") from Cal-Union for a premium of $32,500. This policy had an inception date of November 19, 1983 and an expiration date of November 19, 1984.

The policy provided coverage at five designated locations. It was an "all risk" policy, meaning that it covered damage to all real and personal property at those locations, subject to specified exclusions and limitations. The policy's maximum insurance coverage was $1,000,000.

The policy also excluded certain perils. Among these excluded perils was: "Loss or damage to personal property resulting from ... leakage ... unless such loss or damage is caused directly by ... sprinkler leakage." Policy (Perils Excluded ¶ 12) at 2.

Although the standard policy adopted by Puro and Cal-Union ordinarily excludes general water damage, this exclusion was voided by the parties. See Policy (Perils Excluded ¶ 3) at 1. Thus, the policy covered water damage, but not without limitation. The policy also provided that Cal-Union's liability for water damage would be limited to $250,000 at location no. 4, and limited to $100,000 at the other four locations (nos. 1, 2, 3, 5). See Policy (Endorsement # 2).

The events leading up to the damage suffered by Puro are not in dispute. On December 28, 1983, Puro suffered a loss at its premises on 1080 Madison Street in Hoboken, New Jersey, designated in the insurance policy as location number 5.

At location number 5, Puro has a dry-pipe sprinkler system, meaning that the pipes fill with air rather than water until the system is activated. Puro's sprinkler system is interconnected with a wet-pipe sprinkler system in the adjacent premises. On December 28, 1983, an alarm sounded in the adjacent premises causing water to fill Puro's dry-pipe sprinkler system. The alarm was classified as false and its cause remains unknown. Subsequently, the water that had filled the dry-pipe system in Puro's premises froze, thereby expanding and rupturing the pipes. As the ice thawed, water flowed through the ruptured pipes onto Puro's property, damaging Puro's inventory of feathers and down. The parties do not dispute the occurrence of these events; nor do they dispute that the physical cause of the damage was the water that came into contact with Puro's property.

## II

In its motion for summary judgment, Cal-Union argues that since plaintiff's goods were damaged by contact with water, the loss was caused by "water damage" and Cal-Union's maximum liability under the policy is $100,000. Cal-Union contends that the term "water damage" is unambiguous, and so it is entitled to summary judgment as a matter of law.

In its cross-motion for summary judgment, Puro argues that the legal cause of its damage should be determined by the precipitating cause which sets into motion the chain of events that produces the ultimate loss. Thus, the fact that water was the immediate cause of the loss is not dispositive. Here, the precipitating cause of the loss was leakage from the sprinkler system. Therefore, according to Puro, the legal cause of the damage was sprinkler leakage, and the policy's limitation on liabil-

ity for water damage should be found inapplicable as a matter of law.

Puro also argues that the policy's limitation on liability is inapplicable because "sprinkler leakage" is a distinct peril from "water damage." In support of this proposition, Puro relies on case law, trade usage and the use of the term in the policy itself. To buttress its trade usage argument, Puro cites a bulletin published by the National Underwriters Company which distinguishes sprinkler leakage insurance from other types of insurance. In support of its argument based on the use of the term in the policy, Puro notes that the policy addresses general water damage and sprinkler leakage damage in two separate sections, thus suggesting that the parties themselves regarded these perils as distinct. *Compare* Policy (Perils Excluded ¶ 3) *with* Policy (Perils Excluded ¶ 12).[2] According to Puro,

had Cal-Union desired to limit the recovery of *all* loss resulting from water damage, from whatever source, it could have included such language in the policy.

### III

The central issue on these cross-motions for summary judgment—indeed, the only matter seriously in dispute between Puro and Cal-Union—is whether, as a matter of contract interpretation, the policy's limitation on Cal-Union's liability for "water damage" may fairly be applied to damages suffered by Puro as a result of "sprinkler leakage."

It does not appear that the term "water damage" is clearly defined under the law of New Jersey,[3] either by case law or by statute.[4] For the purpose of a summary judgment determination, however, this Court need not determine the actual mean-

---

**2.** As previously noted, *supra* at 3, the parties voided the exclusion relating to general water damage, but elsewhere provided that such liability would be limited to $100,000 or $250,000, depending on the location at which the damage occurred.

**3.** Puro asserts that this action is governed by New Jersey law. Cal-Union has not contested this assertion, though it cites case law from New York, New Jersey and other jurisdictions (including Canada). Given Cal-Union's near-acquiesence to Puro's position that New Jersey law controls, this Court might well be justified in applying New Jersey law without further inquiry. *Cf. Lehman v. Dow Jones & Co.,* 783 F.2d 285, 294 (2d Cir.1986) (Friendly, J.).

In any event, under New York's conflict of law rules, which this Court is bound to apply in diversity actions, *see, e.g., Aetna Casualty & Surety Co. v. General Time Corp.,* 704 F.2d 80, 82 (2d Cir.1983), New Jersey's substantive law on insurance policies appears to be controlling. New York courts have traditionally resolved conflict of law issues involving insurance policies by applying the law of the state which the parties understood would be the principal location of the insured risk and the one most intimately concerned with the outcome of the litigation. *Steinbach v. Aetna Casualty and Surety Co.,* 81 A.D.2d 382, 385, 440 N.Y.S.2d 637, 640 (1st. Dept. 1981); *see Aetna Casualty, supra,* 704 F.2d at 82.

Here, the insured risk (location number 5) was located in New Jersey. In addition, New Jersey's interest in protecting the rights of Puro, a domestic corporation whose insured goods were damaged within the state, is clearly superi-

or to any interest New York may be said to have in this litigation. Indeed, New York's connection to the present litigation is marginal; the most that can be said is that Cal-Union is a California corporation doing business in New York and that one of Puro's five insured locations is situated in New York (compared to three which are situated in New Jersey). Under the circumstances, it is obvious that New Jersey is the state most intimately concerned with the outcome of the litigation, and this Court has no qualms in applying New Jersey law.

**4.** In contrast, New York insurance law defines "water damage" as:

insurance against loss or *damage by water or other fluid or substance to any property resulting from the breakage or leakage of sprinklers,* pumps or other apparatus erected for extinguishing fires or of water pipes or other conduits or containers, or resulting from casual water entering through leaks or openings in buildings or by seepage through building walls, but excluding loss or damage resulting from flood or the rising of the waters of the ocean or its tributaries; and including insurance against accidental injury of such sprinklers, pumps, fire apparatus, conduits or containers.

N.Y.Insur.L. § 1113(a)(6) (McKinney 1985) (emphasis added). Arguably, if this action were governed by New York law, this statute (which neither party cited to the Court) would have eliminated the ambiguity concerning the definition of "water damage" and compelled this Court to render summary judgment in defendant's favor.

ing of the term. It is necessary only to determine whether the term "water damage" is unambiguous, thus eliminating any question of fact. *Katinsky v. Radio Shack Div. of Tandy Corp.*, 524 F.Supp. 807, 812 (D.N.J.1980), *aff'd mem.*, 673 F.2d 1300 (3d Cir.1981).

In determining whether "water damage" is an unambiguous term, the Court is greatly influenced by the decision in *Goldbaum v. Bank Leumi Trust Co. of New York*, 543 F.Supp. 434 (S.D.N.Y.1982) (Duffy, J.). In *Goldbaum*, a case governed by New York law, the plaintiff brought suit to recover for damage caused by water from defendant's sprinkler system. The defendant moved for summary judgment, arguing that the parties' lease agreement specifically excluded liability for water damage. *Id.* at 436. The Court denied summary judgment, however, on the grounds that a genuine issue of material fact existed with respect to whether loss from "water" was meant to cover only rainstorms, floods and other natural phenomenon or whether it also included water from sprinkler systems. *Id.*

Cal-Union attempts to distinguish *Goldbaum* on the grounds that it involved a bailment agreement rather than an insurance contract. Such a formal distinction ignores the fact that courts have adopted a similar approach towards ambiguities in these two types of agreements.[5] Accordingly, I am inclined to agree with the determination in *Goldbaum* that the term "water" is ambiguous, and that plaintiff should be given the opportunity to resolve the contractual ambiguity at trial. *See id.*

Thus, it is clear that Cal-Union is not entitled to summary judgment in its favor. It is equally clear, however, that Puro—

having demonstrated the ambiguity of the term "water damage" to this Court's satisfaction—is not entitled to summary judgment in its favor. As the Second Circuit recently stated:

> In an action on a contract … summary judgment is perforce improper unless the terms of the agreement are "wholly unambiguous." … Accordingly, unless the moving party can establish th[a]t contractual language is not "susceptible of at least two fairly reasonable meanings," … a material issue exists concerning the parties' intent, and the nonmoving party has a right to present extrinsic evidence regarding the meaning of the contested term.

*Wards Co. v. Stamford Ridgeway Associates*, 761 F.2d 117, 120 (2d Cir.1985) (Kaufman, J.) (citations omitted).

In the instant case, it cannot seriously be argued that the term "water damage" is wholly unambiguous. The meaning that Cal-Union wants ascribed to that term, one that would encompass damage from "sprinkler leakage," is certainly not unreasonable, especially since it appears to be consistent with New York law. *See* N.Y. Ins.Law § 1113(a)(6) (McKinney 1985). Similarly, the meaning advocated by Puro, based on evidence relating to trade usage and the language of the contract itself, cannot be considered unreasonable. Thus, "a material issue exists concerning the parties' intent," *id.*, and this Court is precluded from granting summary judgment in either party's favor.[6]

The meaning of the term "water damage" contained in Puro's insurance policy is on the present record ambiguous; the issue must be resolved at trial. *See Katinsky v.*

---

**5.** In bailment agreements, ambiguous terms are construed strictly against the bailee, particularly when the bailee drafted the agreement. *Goldbaum*, 543 F.Supp. at 436. Similarly, under New Jersey law, terms in insurance contracts are construed strictly against the drafter. *See, e.g., Allen v. Metropolitan Life Ins. Co.*, 44 N.J. 294, 305–06, 208 A.2d 638, 644 (1965); *Meier v. New Jersey Life Ins. Co.*, 480 A.2d 919, 924, 195 N.J. Super. 478 (App.Div.1984).

**6.** Because it is "perforce improper" to grant summary judgment in a contract action if the terms of the agreement are materially ambiguous, *Wards Co., supra*, 761 F.2d at 120; *see Wells Fargo Asia Ltd. v. Citibank, N.A.*, 612 F.Supp. 351, 357 (S.D.N.Y.1985), there is no need to consider further Puro's argument that summary judgment should be granted in its favor because the precipitating cause of the damage to plaintiff's goods was "sprinkler leakage" rather than "water damage."

*Radio Shack Div. of Tandy Corp.*, 524 F.Supp. 807, 812 (D.N.J.1980), *aff'd mem.*, 673 F.2d 1300 (3d Cir.1981). Accordingly, the cross-motions for summary judgment are denied.

SO ORDERED.