PURO INTERNATIONAL OF NEW JERSEY CORP., Plaintiff,

v.

CALIFORNIA UNION INSURANCE CO. and Genatt Associates, Inc., Defendants,

CALIFORNIA UNION INSURANCE CO., Third–Party Plaintiff,

v.

T & T REALTY CO., INC., Third–Party Defendant,

GENATT ASSOCIATES, INC., Third–Party Plaintiff,

v.

T & T REALTY CO., INC., Third–Party Defendant.

No. 84 Civ. 8054 (PKL).

United States District Court, S.D. New York.

Oct. 29, 1987.

---

Lowenthal, Landau, Fischer & Ziegler, P.C., New York City (Stephen R. Sugrue, of counsel), for plaintiff.

Gwertzman, Pfeffer, Toker & Lefkowitz, New York City (Roberta Burman, of counsel), New York City, for defendant and third-party plaintiff, California Union Ins. Co.

Dupee, Madison & Hoover, Goshen, N.Y. (Jon Charles Dupee, of counsel), for third-party defendant, T & T Realty Co.

Lester Schwab Katz & Dwyer, New York City (Charles C. Neale, Saul Goodstein, of counsel), for defendant and third-party plaintiff, Genatt Associates, Inc.

## OPINION & ORDER

LEISURE, District Judge:

The matters now before the Court in this case comprise a series of motions and cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Puro International of New Jersey Corp. ("Puro"), a processor of down and feathers and a dealer in finished down products, has sued California Union Insurance Co. ("Cal Union"), the insurer of that part of Puro's property that was damaged while stored in a leased warehouse, and Genatt Associates, Inc. ("Genatt"), the broker of the insurance policy. Cal Union has brought a third party action against T & T Realty Co., Inc. ("T & T Realty"), the owner and lessor of the warehouse where the damage occurred, and Genatt has brought a second third party action against T & T Realty.

The incident at the heart of the case occurred in December, 1985, when a quantity of water accidently flowed onto Puro's goods from an overhead sprinkler system. At issue in the underlying action is the extent of Cal Union's liability under the insurance policy.

In early 1986, this Court heard motions for summary judgment between Puro and Cal Union as to the amount of damages for which Cal Union is liable. Insurance policy # ZPM010212 ("the policy")[1] provides that Cal Union's liability for "sprinkler leakage damage" is the maximum amount payable under the policy, $1 million. Its liability for "water damage", however, is limited to $100,000. Finding that an issue of material fact existed as to the intent of the parties to the insurance policy, this Court denied cross-motions for summary judgment and determined that the issue could only be resolved at trial. *Puro Int'l. of New Jersey Corp. v. California Union Ins.*, 631 F.Supp. 1226, 1229 (S.D.N.Y.1986).

The Court now confronts a second set of summary judgment motions. T & T Realty has moved for summary judgment against Cal Union on the basis of an exculpatory clause in the lease. Cal Union has cross-moved for summary judgment against T & T Realty, and moved, in the alternative, for summary judgment against Puro. Puro has in turn cross-moved for summary judgment against Cal Union.[2] Defendant Gen-

---

1. The policy is attached as Exhibit A to the Affidavit of Robert M. Ruffalo, sworn to on September 5, 1986, in Opposition to Motion.

2. In its moving papers, Puro presented its position in two forms. First, it requested that the Court grant summary judgment on the issue of whether Puro's lease provisions constituted a breach of its insurance contract. It later asked the Court to strike Cal Union's sixth affirmative defense, the defense that embodies the issue of breach of the insurance contract by Puro. The

att has asked the Court to "search the record" and grant it summary judgment against Puro, even though it has not formally moved for summary judgment.[3]

The various cross-motions present two basic issues: first, whether Puro, by having agreed previously to certain provisions in its lease with T & T Realty, breached its insurance contract with Cal Union; and second, whether the lease has any relevance to an incident that may not have arisen within the landlord-tenant relationship. For the reasons stated below, the Court grants Puro's motion for partial summary judgment against Cal Union and denies all other motions.

### FACTUAL BACKGROUND

The following facts are derived from the affidavits and Local Rule 3(g) statements

of the parties, as well as certain documentary exhibits submitted to the Court.

By an instrument dated May 17, 1983, ("the lease") Puro leased an unheated warehouse building at 1040–1080 Madison Street, Hoboken, New Jersey (the "leased premises") from the owner of the warehouse, T & T Realty. The printed body of the lease contains a section, Paragraph 8, by which Puro agreed to indemnify the landlord from liability for loss of or damage to its (Puro's) property.[4] In a typed rider attached to the lease, the section entitled "Liability of Landlord" reiterated the agreement to indemnify the landlord.[5] In a separate section of the rider, entitled "Subrogation", both Puro and T & T Realty waived the subrogation rights of their respective insurers.[6] Pursuant to the lease,

Court understands Puro to be moving for partial summary judgment pursuant to Fed.R.Civ.P. 56 on the issue raised in Cal Union's sixth affirmative defense, not moving to strike Cal Union's answer pursuant to Fed.R.Civ.P. 12(f).

3. There is authority in this Circuit for such a consideration under these circumstances. *See LeMon v. Zelker,* 358 F.Supp. 554, 555 (S.D.N.Y. 1972) (citing *Time, Inc. v. Bernard Geis Assoc.,* 293 F.Supp. 130, 133 (S.D.N.Y.1968)). However, courts must take great care in granting such requests, to be certain that the opposite side has had sufficient notice of the request and adequate opportunity to reply. 6 J. Moore, *Moore's Federal Practice,* ¶ 56.12 at 34 (2d ed. 1986). In light of the disposition of the motions herein, it is unnecessary for the Court to reach the question of whether Puro should be given time to respond before Genatt's informal summary judgment motion is granted or denied.

4. Paragraph 8 of the lease provides:
The Landlord shall not be responsible for the loss of or damage to property, or injury to persons, occurring in or about the demised premises, by reason of any existing or future condition, defect, matter or thing in said demised premises or the property of which the premises are a part, or for the acts, omissions or negligence of other persons or tenants in and about the said property. The Tenant agrees to indemnify and save the Landlord harmless from all claims and liability for losses of or damage to property, or injuries to persons occurring in or about the demised premises.

5. The paragraph of the rider provides:
It is expressly understood and agreed by the parties hereto that the Landlord shall not be liable for any damage or injury to person or

property caused by or resulting from steam, electricity, gas, water, rain, ice or snow, or any leak or flow from or into any part of said building or from any damage or injury resulting from any other cause or happening whatsoever, except as hereinafter provided.

6. The Subrogation section of the rider provides:
Landlord and Tenant hereby waive all rights of recovery against the other and hereby mutually release the other and their respective officers, agents, servants and employees from any and all liability or responsibility to the other or anyone claiming through or under them by right of subrogation or otherwise for any loss or damage to their respective property caused by fire or any other casualty insurable under the standard form of fire insurance policy with all permissable extension endorsements covering additional perils and under any other policy of insurance carried by such waiving party in lieu thereof. Neither party shall have the right to share in the proceeds of any insurance maintained by the other party. Each policy of insurance shall, of [sic] obtainable from the insurer without additional expense, either (i) permit, generally, the insureds waiver herein set forth, and (ii) contain an express waiver by the insurer of subrogation against Landlord or Tenant, as the case may be or (iii) include the name of Landlord or Tenant, as the case may be, as an additional insured, but not as a party to whom any loss may be made payable. If the inclusion of any of the said provisions involves an additional expense, each party, at its expense, and upon notice to such effect from the other party, may require such provision to be inserted in the other's policy.

Puro used the premises to store a quantity of its feathers, down and finished down products.

The leased premises adjoined a building at 550 Ninth Street (the "adjoining building") which was also owned by T & T Realty. The leased premises were serviced by a dry-pipe sprinkler system, a system in which water is not stored in the pipes. The adjoining building was serviced by a wet-pipe sprinkler system, one in which water is stored in the pipes. The wet-pipe system was connected, in part, to the dry-pipe system, and on December 28, 1983, the wet-pipe sprinkler system in the adjoining building accidently discharged. Water from the wetpipe system seeped into the dry-pipe system of the leased premises, froze, and ruptured the pipes. After the thaw, the water from the pipes flowed onto Puro's property.[7]

Cal Union concedes that the insurance policy with Puro as obtained by the broker Genatt did cover the property which was stored in the leased premises. Affirmation of Roberta Burman, Esq., in Opposition to Motion of T & T and in Support of Cross–Motion, at 2 (hereinafter "Burman Affirmation"). However, there was no reference in the policy as to whether or not Puro had previously waived the insurer's right of subrogation. Moreover, no request had been made upon Cal Union, by Puro or anyone acting for Puro, either a) to waive its right of subrogation, b) to allow Puro to waive that right, or c) to name T & T Realty on the policy.

## SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Supreme Court has noted, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which were designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1) (citation omitted). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985)).

The Court must first look to the substantive law governing the case to determine which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 106 S.Ct. at 2510. Once the Court has determined what facts are material, it must then determine whether there is a genuine issue as to a material fact. At this stage "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 2511. The standard for summary judgment thus "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

---

**7.** Puro and Cal Union dispute exactly how to characterize the cause of this damage. In the opinion which has already been rendered in this case, *Puro Int'l. v. California Union Ins.,* 631 F.Supp. 1226 (S.D.N.Y.1986), this issue has been set for trial. The precise characterization of the dispute is not material to the motions currently before the Court.

interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra,* 106 S.Ct. at 2553. The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Anderson, supra,* 106 S.Ct. at 2511. The burden then shifts to the nonmoving party to show that there is a genuine issue of fact for trial. *Id.* When, as in this case, both sides move for summary judgment, the Court must determine whether there are genuine issues of material fact present. If there are not, the Court may render a judgment. Mindful of the foregoing principles, the Court now turns to the merits of the parties' cross-motions for summary judgment.

## DISCUSSION

█ In diversity cases such as this, the Court is bound to apply New York's conflict of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Aetna Casualty & Surety Co. v. General Time Corp.,* 704 F.2d 80, 82 (2d Cir.1983). Under New York law, issues involving insurance policies are customarily resolved under the law of the state in which the insured risk was located. *Steinbach v. Aetna Casualty and Surety Co.,* 81 A.D.2d 382, 385, 440 N.Y.S.2d 637, 640 (1st Dept.1981). In this case, the law of the State of New Jersey is controlling for the reasons set forth in the previous opinion in this matter. 631 F.Supp. at 1228, n. 3.

### I

Cal Union's motion for summary judgment against Puro and Puro's cross-motion relate to the question whether Puro breached its insurance contract by having agreed previously to certain provisions waiving subrogation rights. Cal Union argues that Puro had no right to enter into the insurance contract since it had previously, by lease agreement, agreed to waive any future property insurer's rights of subroga-

tion. If the lease agreement is ruled enforceable, Cal Union argues, this should void the insurer's liability under the insurance policy because the policy presupposed that Cal Union would be able to subrogate the claim to the landlord, T & T Realty. (Burman Affirmation, at 8–10.)

█ A close reading of the two relevant paragraphs of the insurance policy defeats this argument. Both sections dealing with subrogation clearly prohibit the insured from waiving subrogation rights, but they deal only with subrogation after a loss. Nowhere in the policy is there any stipulation that the insured may not waive subrogation rights prior to a loss, nor is it stipulated that the insured has not already waived those subrogation rights prior to entering into the insurance contract.

The law in New Jersey on this matter is well-settled. In *Mayfair Fabrics v. Henley,* 97 N.J.Super. 116, 234 A.2d 503 (Law Div. 1967), *aff'd,* 103 N.J.Super. 161, 246 A.2d 749 (App.Div.1968), the tenant's property had suffered fire damage as the result of the landlord's having installed two space heaters in the tenant's premises. The landlord had moved for summary judgment against the tenant on one claim based on negligence. The tenant defended by pointing out that an exculpatory clause in the lease precluded any liability action from being brought against it. The Superior Court denied the landlord's motion:

> The action against the tenant is clearly a subrogation action being prosecuted for the sole benefit of the fire insurance company. Although the right of an insurance company to enforce subrogation rights in appropriate cases has long been well settled, it is also clear that subrogation is not applicable when its enforcement would be inconsistent with the terms of a contract or where the contract, either expressly or by implication, forbids its application.

97 N.J. Super at 126, 234 A.2d at 508.

The leading treatises on insurance are in agreement with New Jersey case law. Professor Couch, in his widely-respected treatise, *Insurance,* declares:

The doctrine of insurance only places the insurer in possession of such rights against third parties as the insured could himself enforce, and it therefore follows that if, prior to execution of the contract of insurance, the insured has executed another contract releasing certain third parties from any liability which might be incurred by them in case of loss, such release will also be binding upon the insurer, in absence of proof that such release was made to defraud the insurer. 16 Couch, *Insurance*, § 61:194 (rev. ed. 1983). *See also* 6A Appleman, *Insurance Law and Practice* § 4092, at 243 (1972) ("An insurer's right of subrogation may be defeated by the insured tenant giving a release to the lessor in his lease, before any loss has occurred." (citation omitted)). Thus, as a matter of law in New Jersey, the non-waiver provision of the prior instrument—the lease between Puro and T & T Realty—would not vitiate the insurance policy subsequently signed between Puro and Cal Union. The Court therefore grants Puro's motion for partial summary judgment against Cal Union and denies Cal Union's motion for summary judgment against Puro.

**II**

The remaining motions relate to the second issue raised here: whether the provisions of the lease have any effect whatsoever on the resolution of this case. A line of cases in the New Jersey courts dating back to 1955 has addressed this issue. The case of first impression in this line is *Zimmerman, Inc. v. Daggett & Ramsdell, Inc.*, 34 N.J. Super 81, 111 A.2d 448 (Law Div. 1955).[8] In *Zimmerman*, the plaintiff had leased one part of defendant's factory for its cosmetics manufacturing concern. Defendant continued to operate its own cosmetics factory in another part of the building. An explosion in defendant's part of the building, admittedly caused by defendant's negligence, caused extensive damage to plaintiff's factory. Although the lease had specifically held defendant-landlord harmless from damage resulting from "explosion," the court nevertheless found that the defendant-landlord was liable. The court reasoned that the damage had not resulted

> from the active or passive neglect of the defendant in the exercise of its functions as a landlord. Rather, the violation of the plaintiff's right is claimed to have stemmed from negligence in the operation of the defendant's commercial enterprise. The boundaries of the field of exempted liability are staked out by the legal relationship which the parties mutually assumed, namely, that of landlord and tenant. The immunity conferred upon the defendant released it only from those obligations with which it would have been burdened as a landlord under the common law. The alleged dereliction was completely extraneous to any duty it had as a landlord, and defendant's position was not different than would be that of a stranger to the lease, similarly circumstanced. To hold otherwise would require the closing of one's eyes to the basic objective of their agreement, which was to define their reciprocal obligations in the letting and occupancy of the property.

*Zimmerman*, 111 A.2d at 450 (cited with approval in *Ultimate Computer Services v. Biltmore Rlty.*, 183 N.J.Super. 144, 443 A.2d 723, 726–27 (App.Div.1982)).

Although most of the litigants in the present case have premised their arguments on the belief that the lease provisions are fundamental, the issue of fact concerning the capacity in which T & T Realty was acting when the sprinkler in the adjoining building discharged was raised by Cal Union. (Burman Affirmation, at 4–5.) However, the proof Cal Union offered for this proposition—a section of the deposition of Joseph Teitelbaum, partner in T & T Realty—provides only partial sup-

---

**8.** The Superior Court, noting that it had found no precedential opinions within the jurisdiction, based its reasoning on a similar case in Massachusetts where the damage had resulted from landlord's negligence in the managing of a piece of land adjoining that where the damage took place. *Smith v. Faxon*, 156 Mass. 589, 31 N.E. 687, 689 (1892). The original Massachusetts case thus closely parallels the case at bar, where it is alleged that the damage to Puro's property resulted from T & T Realty's negligence in the managing of an adjoining building.

port for the statement.[9] Thus, although the evidentiary materials submitted partially negate an element of T & T Realty's prima facie case for summary judgment, they do not go as far as is required to show that a "trial would be a bootless exercise, fated for an inevitable result but at a continued expense for the parties." *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1043 (2d Cir.1986) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986)). An issue of material fact has been raised, but by no means has it been proved to such a degree that a jury could do nothing other than return a verdict in favor of Cal Union.[10]

The factual issue of whether the damage arose within the ambit of the landlord-tenant relationship was never addressed by T & T Realty. The latter third-party defendant chose instead to base all its arguments in answer to the cross-motion on the lease provisions which exculpated it from liability and waived all of Cal Union's subrogation rights. However, if the lease has no bearing on the case, it is clear that its individual provisions also have no effect. Under the circumstances, it appears to the Court that a factual issue of this magnitude is not only material but fundamental to the disposition of the case. The Court therefore concludes that there remains a genuine issue of material fact which must be resolved at trial.

Puro's motion for partial summary judgment on the issue raised in Cal Union's sixth affirmative defense is granted. All other motions are denied. All parties are ordered to appear for a pre-trial conference on November 20, 1987, at 11:30, in Court-room 36.

SO ORDERED.

---

9. In his deposition, Mr. Teitelbaum refers to the building in which the wet-pipe sprinkler system was principally installed as being "adjacent" to the leased premises, as being "the big building," "the main building," separate from the leased premises and connected only by means of "several fire doors." (Transcript of deposition of Joseph Teitelbaum, appended to Cal Union's Notice of Cross-Motion as Exhibit G.)

10. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).